TEXAS & N. O. R. CO. v. WILLIAMS et al.
(No. 6850.)

(Court of Civil Appeals of Texas. Galveston. June 3, 1915. Rehearing Denied June 30, 1915.)

1. ADVERSE POSSESSION ⬥68 — CLAIM OF RIGHT.

To sustain a plea of title in a donor by limitation of 10 years, one who took possession of land by parol gift must show that such donor held the land under a claim of right.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 387–393; Dec. Dig. ⬥68.]

2. ADVERSE POSSESSION ⬥85—SUFFICIENCY OF EVIDENCE.

In trespass to try title, evidence *held* insufficient to sustain finding for defendants that the holding was under claim of right, so as to establish title by adverse possession.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 313, 498–503, 656, 657, 660, 668, 688–690; Dec. Dig. ⬥85.]

3. ADVERSE POSSESSION ⬥114—DEFENSES—BURDEN OF PROOF.

In trespass to try title, the burden is on defendants, setting up title by limitation, to prove their plea by a preponderance of the evidence.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 682, 683, 685, 686; Dec. Dig. ⬥114.]

4. EVIDENCE ⬥582—TESTIMONY ON FORMER TRIAL—PROOF.

On second trial of an action, where a witness on the former trial was dead, and a certified copy of the statement of facts upon the former appeal was introduced to show such witness' former testimony, the stenographer at the first trial testifying at the second that he took down the witness' testimony at the first trial, and was satisfied he took it down correctly, but could not remember what it was, and did not know that the testimony embodied in the statement of facts was a correct reproduction of the testimony as taken down by him, he having lost his notes, it not being shown that the statement was made up from the stenographer's notes, or how or by whom it was prepared, such statement of facts was inadmissible as evidence of the witness' former testimony.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2419–2423; Dec. Dig. ⬥582.]

5. EVIDENCE ⬥576—TESTIMONY ON FORMER TRIAL—GROUNDS FOR ADMISSION.

On second trial of a case, the testimony of a witness on the first trial, since deceased, is admissible on behalf of either party, when properly proved.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2401–2405; Dec. Dig. ⬥576.]

6. EVIDENCE ⬥582—TESTIMONY ON FORMER TRIAL—PROOF.

One who heard a witness, since deceased, testify at a former trial, may be utilized to prove the former testimony for the purposes of a second trial.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2419–2423; Dec. Dig. ⬥582.]

7. CONTINUANCE ⬥29 — ABSENCE OF WITNESS.

Where, on second trial, the plaintiff is refused permission to prove the testimony of a witness on former trial, since deceased, by a certified copy of the statement of facts on appeal succeeding such former trial, if he was not prepared to prove such former testimony in a proper manner, he might, on the ground of surprise, have been granted a continuance to obtain proper evidence of the former testimony.

[Ed. Note.—For other cases, see Continuance, Cent. Dig. § 95; Dec. Dig. ⬥29.]

8. APPEAL AND ERROR ⬥837—REVIEW—INADMISSIBLE EVIDENCE.

Where the trial court improperly admitted a statement of facts on former appeal to prove the testimony on former trial of a since deceased witness, the appellate court will consider such witness' testimony as embodied in the statement in determining whether the verdict was against the evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3262–3272, 3274–3277, 3289; Dec. Dig. ⬥837.]

9. APPEAL AND ERROR ⬥1177—DISPOSITION—INADMISSIBLE EVIDENCE.

Where verdict was for the plaintiff, and defendants appealed assigning error to the improper mode of proof of a deceased witness' testimony on former trial, and the evidence other than that objected to was insufficient to sustain the verdict, the appellate court, after sustaining the objection to the evidence, would not reverse, and render judgment for defendant, but would remand the case for new trial, that plaintiff might make proper proof of the material facts which the record showed could be properly proven.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4597–4604, 4606–4610; Dec. Dig. ⬥1177.]

Appeal from District Court, Jasper County; A. E. Davis, Judge.

Action by the Texas & New Orleans Railroad Company against George Williams and others. Judgment for defendants, and plaintiff appeals. Reversed and remanded.

See, also, 52 Tex. Civ. App. 217, 114 S. W. 877.

Hightower, Orgain & Butler, of Beaumont, and Baker, Botts, Parker & Garwood, of Houston, for appellant. John B. Warren, of Houston, and W. R. Blackshear, of Jasper, for appellees.

PLEASANTS, C. J. This is an action of trespass to try title, brought by appellant against appellees. The suit was originally against George Williams, Henry Williams, C. E. Slade, and the Lemon Lumber Company, and involved the title and possession of a 640-acre survey in Jasper county, known as "T. & N. O. Ry. Survey, section 7." Plaintiff also sought to recover damages from the Lemon Lumber Company and C. E. Slade for cutting and removing timber from said land. All of the defendants, except Henry Williams, disclaimed title. He answered by plea of not guilty and specially pleaded title to the whole of said survey under the 10-year statute of limitation.

This is the second appeal of the case. Upon the trial from which the first appeal was prosecuted the court instructed a verdict for plaintiff for the land, and submitted to the jury the question of damages for cutting timber therefrom. This judgment was reversed by the Court of Civil Appeals for the Third

District; the opinion of the court on that appeal being found in 52 Tex. Civ. App. 217, 114 S. W. 877 et seq. Upon the second trial, defendant Henry Williams having in the meantime amended his answer, and only claiming title to 160 acres, the southeast quarter of said section, the cause was submitted to a jury, and a verdict and judgment were rendered in favor of defendants.

[1-3] In order to sustain his plea of limitation of 10 years, it was necessary for defendant Henry Williams, who took possession of the land upon the suggestion and under parol gift of his father, George Williams, of his claim thereto, to show that said George Williams held adverse possession of 160 acres of said survey under a claim of right. The evidence adduced upon this issue was, in substance, as follows:

In 1894 George Williams purchased from Bert Simmons his improvements, which consisted of a small dwelling house and crib, and a field of about 12 acres. These improvements were situated partly on section No. 7 and partly on school section No. 10, which lies south of and adjoining section No. 7; the house and the greater portion of the field being on section No. 10. After his purchase George Williams took possession of the place. He did not know at this time on what section his improvements were situated. He made application as actual settler to purchase from the state 160 acres of section No. 10, and had it surveyed by Capt. Kellie on October 23, 1897. This survey showed that about 3 acres of the 12-acre field were on section No. 7. After this survey was made he told his son, defendant Henry Williams, he could have his claim upon section No. 7, and if he would settle on it he might acquire a home of 160 acres. Following this gift and advice, Henry built a house on section No. 7, and has held possession and asserted a claim to 160 acres thereof continuously since he took possession in 1897. This suit was brought on September 13, 1906. Henry Williams testified that his father said he claimed 160 acres on section No. 7, but does not say when his father first told him that he claimed land on section No. 7. He also testified that, when his father first moved on the place purchased from Simmons, he did not know on what section his improvements were situated, but said he thought they were on section No. 7.

J. R. Williams, a brother of defendant Henry Williams, testified that in 1895, in contemplation of his approaching marriage and his desire to acquire a home, he suggested that he would build a house and settle on section No. 7, near his father's place, but his father objected, and stated that he claimed the land and did not want any one to live that close to him. He further testified:

"As to when it was my father told me he claimed 160 acres of section 7, will say I can't give you any dates on that. I will say it was in 1897 or 1898. I remember when Capt. Kellie came down there and ran the division line between section 7 and section 10. As to whether or not that was the first time that line was run, and the purpose of running it was to locate my father's 160 acres in the northeast corner of section 10, which was school land, will say I don't know whether that was his business or not: he came down there and located the line. My father had him run that line. It is a fact that my father told me that he claimed 160 acres on section 7 after Capt. Kellie ran that line. As to whether or not he ever told me that before Capt. Kellie ran that line, will say I have no recollection; my recollection is not clear on that. * * * As to how much land he said he was claiming in 1895, will say he said he was claiming that land. He didn't say how much. As to whether or not he never said anything about 160 acres, will say I do not have any recollection of his specifying any land." "Question. Now, Mr. Williams, I asked you a while ago if you ever heard your father claim 160 acres of land on section 7 before he made his application to the state; what do you say about that? Answer. He didn't make any claim before he made his application to the state. Yes; he made it. He made it before he made his application to the state. I don't recollect his making the claim before Capt. Kellie ran that line there. As to whether or not he told me he didn't make it before Capt. Kellie ran the line, will say he didn't know where it was at before he run the line."

Ben Hollis, for defendant, testified that he heard George Williams say in 1896 at a log-rolling which took place in the spring of that year, that he claimed 160 acres on section No. 7, and that the railroad company would have to show him that the land was not his, and that he was prepared to pay the costs. This witness also testified that in 1896 George Williams told him that he had given defendant Henry Williams his claim on section No. 7.

Hamp Gentry testified, for defendant, that George Williams told him that he had given Henry Williams 160 acres of land, but does not remember what section he said the land was on, and that the best of his recollection is that it was in the fall of 1893 that George Williams told him this.

This is all of the testimony tending to show that George Williams ever claimed 160 acres, or any quantity, of land on section 7 outside of his inclosure, which, as before stated, only embraced a few acres on said section. None of this testimony was adduced upon the first trial. George Williams himself testified on that trial, and, having died before the second trial, plaintiff, over the objection of defendants, introduced in evidence a certified copy of his testimony as it appears in the statement of facts filed in the Court of Civil Appeals on the former appeal of this case. This testimony is as follows:

"I am the father of the defendant Henry Williams. I know where this land is; that is, the land in dispute, section 7. It is the southeast corner of section 7. Henry Williams has a dwelling house and a barn and some land on section 7, that is cultivated, and has been cultivated for 12 years. He has about 12 acres of cultivated land on this section, I think; never measured it. The 12 acres are right along on the line of section 10. Part of this land has been cultivated 13 years. It was cultivated when I bought it from Bert Simmons. I gave Henry my claim to the land. After I bought

it, I had it cultivated and cleared some, up to the time I gave it to Henry Williams. I did not have the land surveyed right then. I bought a piece of school land, and when I had Capt. Kellie to survey it, it took in a part of section 7. [It was shown that witness bought the northeast quarter of section 10, which was a school land section, and lay directly south of section 7, and that same was surveyed for him by Capt. E. I. Kellie on October 23, 1897.] When the first survey was made there, it cut off 2½ acres, and when surveyed again it cut off about 12—something like that. The present survey cut off about 12 acres of section 7. I said that as long as I kept the land I kept it in cultivation. Since I gave it to Henry, he has been cultivating it ever since. I am 70 years old, and have lived on section 10 for 12 years. As to who I purchased from, will say I bought the improvements from a man named Simmons. Section 10 at that time was public land. It belonged to the state of Texas, school land. As to whether or not I purchased section 10, will say only one-fourth of it, a quarter. Capt. Kellie surveyed that land 6 or 7 years ago. Up to that time I did not know where the line ran between sections 7 and 10. I did not know where the lines ran between sections 7 and 10, and 6 or 7 years ago was the first time I discovered that I had in cultivation about three acres belonging to section 7. * * * The first survey was made by Capt. Kellie 6 or 7 years ago. That was the first time that I knew I had encroached on section 7 at all. That is the first time that my son Henry knew that I had encroached on section 7. I gave this land to my son, Henry Williams, as soon as I found the survey cut off a piece of land. I told him that, if he wanted to go on there and take the place, he could have it. As to whether or not I told him he could have three acres, will say I told him he could get a home there maybe; probably get a home." "Question. Tell this jury, under your oath, is it not a fact that you gave to Henry Williams all you had encroached on section 7, T. & N. O. Railroad Company, Jasper county? Answer. That is all I had to give him. Question. I thought so. At that time, 6 or 7 years ago, you gave Henry Williams only 3 acres on section 7? Answer. I gave him my interest, and I told him that maybe, if he would stay there long enough, he would get a home. I say that 6 or 7 years ago was the first time that I knew I encroached on section 7, T. & N. O. Railroad Company. I say that Capt. Kellie was down there about 6 or 7 years ago. I don't really know how long afterwards before the other two surveyors came down there and ran the lines between section 7 and 10; 2 or 3 years, will say; that will come somewhere in the neighborhood of it. The other surveyors were McMahon and Bean. It is a fact that McMahon and Bean drew the lines further south. According to Capt. Kellie's lines, I had encroached on section 7 about 3 acres. When McMahon and Bean came in there, they drew the lines a little further south. According to their lines, about 12 acres was over on section 7. McMahon and Bean came there, and corrected that survey, and straightened it up, and McDonald ran the line where McMahon and Bean did. That was further south, and encroached about 12 acres. I assess my land for taxes. I never rendered my land on section 7, T. & N. O. Railroad Company, for taxes. I cannot tell you whether Henry has or not. I have never paid any taxes on section 7, T. & N. O. I did not know I encroached 2 or 3 acres on this other section until 5 or 6 years ago. I say that. I swear that. I gave him these 3 acres 5 or 6 years ago, and told him he might get a home; that is correct. * * * When I bought out Simmons, I bought his improvements. I paid him $75 for it; traded him a horse. I bought him out 12 or 13 years ago; 13 years ago next fall; 1894 is the very

date. I bought him out in 1894. I had nothing to do with the cutting of this timber."

Under an appropriate assignment of error the appellant assails the finding of the jury in favor of defendants upon the issue of limitation, on the ground that it is so against the overwhelming weight and preponderance of the evidence that it is clearly wrong and should have been set aside by the trial court. We think the assignment should be sustained. Without considering the testimony of George Williams, reproduced from the statement of facts upon the former appeal, the testimony offered by defendants to show a claim by George Williams prior to the time Kellie made the survey in 1897 to any land on section No. 7 which was not within his inclosure is so indefinite and contradictory that it is doubtful whether, if standing alone, it is sufficient to sustain a finding that said Williams claimed 160 acres on said section. When all of the testimony is considered, it is clear to us that the verdict is wrong, and the jury in arriving at such verdict ignored the rule which placed the burden upon the defendants to establish their plea of limitation by a preponderance of the evidence. Willis v. Lewis, 28 Tex. 185; Zapp v. Michaelis, 58 Tex. 270; Railway Co. v. Somers, 78 Tex. 440, 14 S. W. 779; Railway Co. v. Wilson, 60 S. W. 438; Roberts v. Agnew, 103 S. W. 1178.

[4, 5] Appellees insist that, in passing upon the question of whether the verdict is so against the great weight and preponderance of the evidence as to require a reversal of the judgment, we should not consider the testimony of George Williams upon the former trial of this cause, because the certified copy of the statement of facts upon the former appeal was not admissible in evidence to show what the testimony of George Williams was on the former trial, and his testimony upon that trial was not otherwise shown. We agree with appellees that the copy of the testimony of George Williams as it appears in the statement of facts upon the former appeal, certified to by the clerk of the Court of Appeals in whose custody the statement of facts now is, was not admissible as evidence of the facts testified to by said witness on the former trial. Dwyer v. Rippetoe, 72 Tex. 532, 10 S. W. 668. There is no statute which makes a certified copy of a statement of facts evidence of the contents of such statement. George Williams having died before the second trial, his testimony upon the former trial was admissible on behalf of either party on the second trial; but that testimony could not be properly shown by a certified copy of the statement of facts prepared and filed in the appeal from the judgment on the first trial. The stenographer upon the first trial testified on this trial that he took down the testimony of George Williams upon the first trial and was satisfied he took it down correctly; but he did not remember what his testimony was and did not know

that the testimony copied in the statement of facts was a correct reproduction of the testimony as taken down by him. He had lost his notes taken on the trial, and had no way of determining whether the statement of facts contained a correct copy of the witness' testimony. It was not shown that the statement of facts was made up from the stenographer's notes, or how or by whom it was prepared. We think proof of these facts, and that the statement was in substance the testimony of the witness, was necessary to make the statement of facts on the appeal admissible as evidence of what the witness testified on the first trial. Dwyer v. Bassett, 1 Tex. Civ. App. 513, 21 S. W. 621. The original statement of facts not being obtainable, its contents could only be proven by an examined copy. The learned trial judge first ruled that a certified copy was not admissible, and then withdrew his ruling and admitted the copy. We think his first ruling was correct.

[6, 7] It does not follow, however, that because the testimony of the witness upon the former trial was not proven in a manner authorized by law that we should not consider it for any purpose. The testimony of the witness upon the former trial was most material, and, if proven in a proper way, was clearly admissible. If the trial court had sustained appellees' objections to the introduction of the certified copy, plaintiff might have proven what the testimony was by a witness who heard Williams testify, and, if not prepared to make the proof at that time, might have, on the ground of surprise, been permitted to withdraw the case from the consideration of the jury and continue same, and thus had an opportunity of obtaining proper evidence of the testimony of the witness upon the former trial.

[8, 9] It seems to us that it would be unfair to plaintiff, after the trial court has admitted the evidence, for us to refuse to consider it in determining the question of whether the verdict was against the evidence. If the verdict had been for the plaintiff, and defendant had appealed and assigned error in the admission of this evidence, and the evidence other than that objected to was insufficient to sustain a verdict for plaintiff, we would not, after sustaining the objection to the evidence, reverse and render judgment for defendant, but would remand the cause, in order that plaintiff might have the opportunity of making proper proof of the material facts which the record shows could be proven upon another trial, and we think upon the same ground of fairness we ought to consider the whole of the material evidence submitted to the jury, in order to determine whether the verdict is sustained by the evidence.

We do not think this holding is in conflict with the opinion of our Supreme Court in the case of Henry v. Phillips, 105 Tex. 466, 151 S. W. 533. In the case cited, certain facts were shown by the evidence which the court held immaterial and incompetent to prove any issue in the case, and, though not objected to, should not be considered for any purpose by the appellate court.

The testimony of George Williams on the former trial was competent and most material upon the issue involved in this case, and, if no objection had been offered as to the manner in which proof of that testimony was made, there could be no question that it should be given full consideration. If defendant had made no objection to this testimony, and judgment had been rendered for plaintiff thereon, and defendant had appealed, we certainly would not be authorized to reverse the judgment on the ground that there is no evidence to support it. The objection in this case is not to the relevancy or competency of the facts proven, but to the manner or method of proving the facts, and for this reason this case is distinguishable from the case cited.

For the reasons before stated, we are of opinion that the judgment of the court below should be reversed, and the cause remanded; and it has been so ordered.

Reversed and remanded.