**AMERICAN NAT. INS. CO. v. INGLE.**

No. 12651.

Court of Civil Appeals of Texas.  Dallas.

March 25, 1939.

Dissenting Opinion April 6, 1939.

Rehearing Denied May 13, 1939.

W. B. Handley, of Dallas, for appellant.

W. J. Rutledge, Jr., of Dallas, for appellee.

LOONEY, Justice.

Mrs. Billie Griffin Ingle, widow of Andrew J. Ingle, sued the American National Insurance Company on its policy for $1,000, issued on the life of the deceased, payable to appellee as beneficiary. Appellee made the usual allegations in such cases, among others, that the insured died on August 24, 1935, while the policy was in full force, that proof of his death was furnished appellant and demand made for payment of the full amount due upon the policy, which was refused, whereupon, appellee sought recovery of the face of the policy, less the amount of the loan against it, interest thereon, together with the statutory penalty, and a reasonable attorney's fee.

Appellant admitted liability on the policy, to the extent of $37, being the amount alleged to be due as a non-participating paid-up endowment insurance, but, in other respects, appellee's allegations were denied; appellant contending that, under the provisions of the contract, the insured could have elected to accept the cash surrender value of the policy, but, having failed to do so, it automatically continued as non-participating paid-up insurance. for $37.00, which amount was tendered in settlement of the claim. The case was tried without a jury, resulting in a judgment in favor of appellee for $1,475, which amount included the net value of the policy, penalty, interest, and a reasonable attorney's fee, to

which appellant excepted, gave notice of and perfected this appeal.

The material facts are these: The insured being out of work and unable to pay premiums as they accrued, and having paid three full years' premiums, arranged a policy loan for $20.29 with which he paid all over-due premiums, also a semi-annual premium that carried the policy to May 15, 1935. At the time of the loan the policy had a reserve of $34; the loan consuming $20.29, left of the reserve approximately $14, which was sufficient, if applied, to extend the insurance several months beyond August 24, 1935, the date of the insured's death.

Appellant insists that at the death of the insured, the insurance was in force as a paid-up policy for only $37; which was tendered to appellee in full settlement of her demand. No question is raised as to the sufficiency of the evidence to sustain the judgment for the amount rendered, but, as before indicated, appellant's main contention is set forth in its second assignment of error, as follows: "The judgment is contrary to the law and evidence and not supported by either, in that the policy contract in clear and unambiguous language provides in substance that after three full years' premiums have been paid, and within thirty-one days of default in the payment of any subsequent premium, the insured may elect to surrender the policy for its cash surrender value in accordance with the table of guaranteed values, and if the cash value is not selected, then the policy shall be automatically continued as non-participating paid-up endowment insurance as specified in the table of guaranteed values, subject to being reduced proportionately in case of any indebtedness against the policy, and thus, the policy secures to the owner thereof a stipulated form of insurance at least equal to the reserve at the date of default, as required by Article 4732, and a provision for extended insurance may not be read into the policy."

The controlling statute is Article 4732, Revised Statutes, which provides that: "No policy of life insurance shall be issued or delivered in this State, or be issued by a life insurance company organized under the laws of this State, unless the same shall contain provisions substantially as follows". Then follow subdivisions 1 to 11, inclusive, prescribing the essential provisions required to be inserted in life policies coming

under the provisions of the statute. While we do not think the case is within the terms of, or controlled by, the provisions of the contract invoked by appellant, but even if so, we do not think there will be found, either in the controlling statute or in the provisions of the contract invoked, any warrant for the contention that, because the owner failed to exercise his option to surrender the policy for its cash value, it "automatically continued as non-participating paid-up endowment insurance". The statute contains no provision authorizing an automatic change of the contract, and, on proper construction, we do not think any such meaning will be found in the pertinent provisions of the contract.

■ Subdivision 7 of Article 4732 treats the subject under consideration and directs that policies shall contain a provision substantially to the effect that, in the event of a default in premium payments, after paying three full years, the owner would be entitled to a stipulated form of insurance, in an amount to be ascertained according to the formula prescribed; and that the policy shall also stipulate that it may be surrendered for its cash value, etc. Thus, the owner is given the right to exercise either one or the other of these options, and no provision is found in the law authorizing an automatic change of the contract to one of paid-up insurance, in the event he fails to exercise the option to accept its cash surrender value.

The equivalent provisions of the contract are found in the policy, under the heading "Non-Forfeiture Provisions", and read: "After three full years' premiums have been paid thereon and within 31 days of default in the payment of any subsequent premium, one of the following equivalent options, subject to any indebtedness hereon, may be elected by filing a written request with the Company at its home office, accompanied by the policy"; then follows a provision for the surrender of the policy for its cash value and continues: "If the cash value is not selected, this policy shall be automatically continued as non-participating paid-up endowment insurance, payable in a single sum at the same time and under the same conditions as this policy, except as to premium payments for the amount as shown in the table of guaranteed values. But any indebtedness on the policy will reduce the amount of paid up insurance in such proportion as the indebtedness bears to

the cash value at the due date of the premium defaulted".

■ We do not think there exists a necessary conflict between the statute and the contract. In giving the owner the right to exercise the options as indicated, obviously, the policy is in harmony with the statute. It then provides that "If the cash value is not selected", implying, necessarily, that if the other option is exercised, that is, to surrender the policy and accept paid-up insurance, the "policy shall be automatically continued as non-participating paid-up endowment insurance"; in other words, if the owner accepts paid-up insurance, the policy, already in existence, "automatically continues as a non-participating paid-up endowment insurance, payable in a single sum at the same time and under the same conditions as this policy", etc., the policy automatically becoming the form of the new contract, that is, the mechanics of the new arrangement. Thus construed, no conflict will be found between the statute and the contract, in the respect under consideration. However, if the contract has the meaning sought to be attributed to it, necessarily it would be an attempt to destroy a valuable privilege guaranteed the policy holder by statute, that is, the right to exercise the options named and choose the settlement desired. Any such provision in the contract, being in derogation of plain mandatory provisions of the statute, in our opinion, would be ineffective and void under the authorities hereinafter cited.

However that may be, we are of opinion that, the case arose under, and is controlled by the "Cash Loans" provisions of the contract and statute, relative to that subject. The statute prescribes (Section 6, Art. 4732) that the policy shall contain a provision to the effect, that, after the payment of three full years' premiums, (the policy being then in force) the insurer will advance upon the sole security of the policy a sum equal to, or at the option of the owner, less than, the legal reserve, etc., and further, that "It shall also be stipulated in the policy that failure to repay any such advance, or to pay interest, shall not void the policy until the total indebtedness thereon to the company shall equal or exceed the loan value. No condition other than as herein provided shall be exacted as a prerequisite to any such advance. * * *" See Sec. 6 of the article. The

supposedly equivalent provision of the insurance contract reads: "Failure to pay such loan or to pay interest thereon when due shall not avoid the policy, unless the total indebtedness to the company on account of or secured by the policy shall equal or exceed the loan value of the policy at the time of such failure, in which case the policy shall immediately cease and become void".

■ While it is obvious that there exists a slight variance between the statutory requirement and the provision of the contract, in our opinion, the variance is immaterial. The statute requires that the policy shall contain a stipulation to the effect that, the failure to repay the loan "shall not void the policy until the total indebtedness thereon to the company [which necessarily includes the amount of the loan, interest, and the aggregate of accrued premiums] shall equal or exceed the loan value", whilst the contract provides that, the policy will be avoided if, at the time of the failure to pay the loan, the total indebtedness to the company shall equal or exceed the loan value. It is obvious therefrom that the policy was in force on August 24, 1935, the date of insured's death, under either the statute or the contract, in that, the total indebtedness due on the policy would not have exhausted its reserve value until in February, following.

The insured exercised one of the options belonging exclusively to him, that is, obtained a policy loan of $20.29, being about $14 less than the cash surrender value of the policy; the unconsumed portion being sufficient to carry the policy as extended insurance several months beyond the date of his death. He had exercised no other option, hence the provisions of the statute, and those of the contract, if in accord with the statute relating to that subject, fixed the rights of the parties and must control the disposition of the case. The loan was not paid when due and thereafter the monthly premiums falling due on the 15th of May, June, July and August, 1935, were not paid, otherwise than by construction, that is to say, from the unconsumed portion of the loan value of the policy, which, as before shown, was sufficient to carry the policy as extended insurance beyond the date of insured's death. But the policy was not avoided thereby, for that, the statute provides definitely that, in the contingency described, the policy would not be avoided until the total indebtedness to the company (necessarily including the amount of the loan, interest and over-due premiums) equaled or exceeded the loan value of the policy. If not avoided, it follows as night the day, the policy was in force so long as there remained sufficient value to absorb the premiums as they matured.

■ But, if it be insisted that, there exists a material conflict between the statutory requirement and the policy provision, and that the policy forbade the application of the unconsumed portion of its loan value to carry same as extended insurance after the due date of the loan, clearly, such provision would be void, because in derogation of the statute. Having exercised the cash loan option as provided in Section 6 of Article 4732, the insured was entitled to all the rights and benefits vouchsafed therein, one of which—and a material one—was the right to have the policy automatically continued in force until the total indebtedness to the company equaled or exceeded the loan value, hence any provision of the insurance contract depriving him of such right, being in derogation of the statute, would be void, although, presumably, the policy was, as to form, approved by the Department of Insurance.

■ Disposing of the motion for rehearing in Gilley v. Missouri State Life Insurance Company, 116 Tex. 43, 52–58, 273 S.W. 825, 285 S.W. 807, 808, Chief Justice Cureton gave an exhaustive analysis of the Article of the statute above referred to, stating that: "The department of insurance is organized for the very purpose of enforcing the insurance laws. It has no reason for existence, except to enforce the insurance laws. In doing this many duties are prescribed, but the basis of all of them is to see that the statutes of the state enacted for the protection of the people are complied with by insurance companies. It would be idle to say that under those statutes it is not the duty of the insurance commissioner to see that insurance companies issue only policies authorized and permitted by the law." The Department of Insurance belongs to the executive branch of the Government, and, although its action in approving a type of policy authorized to be sold to the public, is entitled to great respect by the courts, yet, the question whether or not a particular policy, or policy provision, is in sub-

stantial compliance with the statute, is a judicial question and any substantial departure from requirements of the statute, although approved by the Department of Insurance, necessarily would be void, because in contravention of a mandatory provision of the statute. That a policy provision in derogation of a statute, is ineffective, was held by the Supreme Court in Camden Fire Ins. Association v. Harold E. Clayton & Co., 117 Tex. 414, 6 S.W. 2d 1029. If, on proper construction of the policy provision, it remains doubtful whether it is in substantial compliance with the statutes, that construction will be adopted which makes the contract conform to the requirements of the statute, rather than a construction that imputes an intent to disregard or violate the law, was held in First Texas Prudential Ins. Co. v. Sorley, Tex.Civ.App., 272 S.W. 346, 351; also see 6 R.C.L. p. 839, § 229. With reference to the subdivision of the statute now under consideration, Judge Jackson, speaking for the Amarillo Court of Civil Appeals, in Occidental Life Ins. Co. v. Jamora, Tex.Civ.App., 44 S.W.2d 808, 811, said: "It is immaterial whether the requirements of the statute are incorporated into the policy, as appellant asserts, or whether such requirements are not contained therein as claimed by appellee, because, under the law, the statute becomes a part of the contract of insurance. First Texas Prudential Ins. Co. v. Sorley, Tex. Civ.App., 272 S.W. 346; Camden Fire Insurance Ass'n v. Harold E. Clayton & Co., 117 Tex. 414, 6 S.W.2d 1029".

That appellant considered the policy a subsisting contract at the time of the death of the insured, is revealed in a letter written by F. E. Fischer, supervisor of appellant's conservation and renewal department, to the insured, dated July 27, 1935, stating that, at that time, (a few days less than a month before the death of the insured) the policy was "being carried on extended insurance, in accordance with its terms", and also in a postscript, wrote, "surrender value applied in liquidation of outstanding loan indebtedness, and policy will expire 2–5–37."

Appellant objected to the introduction of the letter and assigned error, as follows: "The court erred in admitting in evidence the letter dated July 27, 1935 signed by one Fischer, stating, among other things, that the policy was being carried on extended insurance and the surrender value had been applied 'in liquidation of outstanding loan indebtedness and the policy will expire 2–5–37', in view of defendant's duly verified plea of non est factum, over the objection that execution of such instrument by defendant or its authority had not been shown by any competent evidence".

We reached the same conclusions as stated in the letter of appellant's supervisor, without considering the probative value of the admissions contained therein, hence, if the court erred in admitting the letter over the objection, the error was altogether harmless. But, in view of appellant's admissions in its pleading, we do not think it can be said that the court erred. In its answer, appellant admitted in effect that, the letter was written by Fischer, but through error on his part and without authority, "to alter or vary the terms of the policy or bind appellant to any contract or agreement for extended insurance". Appellant's contention was and is, that the policy contained no provision for extended insurance and that the letter, in effect, was a contract or agreement for extended insurance. It is our opinion that the letter added nothing, was neither an attempt to add a new provision to the contract nor to change an existing provision, but plainly and simply confirmed an existing status, which conclusively was shown to exist independently of the letter. We, therefore, overrule appellant's assignments and affirm the judgment of the court below.

Affirmed.

BOND, C. J., dissents.

BOND, Chief Justice (dissenting).

The majority having based their conclusion solely on interpretation of the contract of insurance sued upon, which I view is in direct conflict with the opinion of the Commission of Appeals, in The Praetorians v. Redmon, Tex.Com.App., 123 S.W.2d 644, 648 (adopted by our Supreme Court), I deem it unnecessary to extend discussion of my adverse holding to that of the majority. In the cited case, the plaintiff sought recovery on an obligation in the policy to pay double indemnity, whilst in the instant case plaintiff sought recovery for the face value of the policy. In all other respects, the two policies are quite similar.

The Commission of Appeals, in the Redmon case, after relating the various provisions of the policy there involved, held.

that the value of the reserve automatically extended term insurance and was not available to extend the obligation to pay double indemnity, saying: "The value to be applied in calculating the amount of extended term insurance that became effective automatically upon the death of the insured during the sixth certificate year is its cash value as of the end of that year, which is $103. The amount of insurance for which the beneficiary was entitled to have the certificate endorsed as extended term insurance under the third option is the face amount of the certificate reduced in the proportion of $73.88 to $103. Such reduced amount calculated in the manner stated is $282.72, and represents the amount of extended term insurance which became "effective automatically" upon the death of the insured. The trial court should have rendered judgment for plaintiff in such amount."

So, in the case at bar, the non-forfeiture provisions of the policy are: (1) "Non-forfeiture: After three full years premiums have been paid herein and within thirty-one days of default in the payment of any subsequent premium, one of the following equivalent options, subject to any indebtedness hereon, may be elected by filing a written request with the Company at its Home Office, accompanied by the policy." (2) "Cash Surrender Value: To surrender the policy for its cash surrender value in accordance with the 'Table of Guaranteed Values.' Payment of such cash sum may be deferred by the Company for not exceeding ninety days after application therefor is made." (3) "Paid-up Insurance: If the Cash Value is not selected this policy shall be automatically continued as Non-Participating Paid-up Endowment Insurance payable in a single sum at the same time and under the same conditions as this policy, except as to premium payments, for the amount as shown in the 'Table of Guaranteed Values.' But any indebtedness on the policy will reduce the amount of Paid-up Insurance in such proportion as the indebtedness bears to the Cash Value at the due date of the premium defaulted."

In the "Table of Guaranteed Values" the cash or loan value is $34 and the paid-up insurance $95 at the end of the third policy year. Following this table there appears:

"Basis of Computation: The reserve on this policy is based upon the American Experience Table of Mortality with No % additional mortality and Craig's extension and 3½% interest, modified on the Twenty-Payment Life Preliminary Term Plan.

"The net value of each benefit is equal to the full reserve hereon, less a surrender charge not to exceed 2½% of the amount insured. For policy years after the 20th the surrender charge not to exceed ⅒ of 1%.

"The payment of any portion of a year's premium over and above the full number of years' premium indicated will proportionately increase the values shown in table."

The cash value of $34 was equivalent to $95 paid-up insurance. At date of default of premium of May 15, 1935 the indebtedness against the policy was $20.59, reducing the net cash value to $13.41. Using such net cash value as a basis, it produced paid-up insurance of $37. It was admitted that the last premiums paid were from the proceeds of the policy loan.

The policy having been automatically continued as non-participating, paid-up endowment insurance for the amount shown in the table of guaranteed values, but reduced in such proportion as the indebtedness of $20.59, bears to the cash value of $34 at the date of default in payment of premium, at the date of the insured's death, the policy of insurance being in force as a paid-up policy in the amount of $37 and the defendant having duly tendered to plaintiff the amount of the paid-up insurance; therefore, the judgment of the court below should be reversed; the judgment set aside; and, judgment here rendered for the plaintiff for the sum of $37. All cost in this court and in the court below be taxed against appellee.