COMMERCIAL STANDARD INS. CO. v.
EBNER et al.

No. 15060.

Court of Civil Appeals of Texas.
Fort Worth.

Oct. 7, 1949.

Rehearing Denied Nov. 4, 1949.

Milburn Nutt, Wichita Falls, for appellant.

J. Ralph Schoolfield, Wichita Falls, for appellees John Ebner, et al.

J. R. Ogle and Smoot & Smoot, all of Wichita Falls, for appellees Collier & Son.

SPEER, Justice.

This appeal involves, principally, the construction and application of the provisions of an insurance policy issued for the purpose, among other things, to enable the owners of trucks to procure from the Railroad Commission of Texas a permit to operate such trucks on the highway as common carriers of livestock for hire, under the provisions of Article 911b, Vernon's Anno.Civ.St., and the various sections thereof.

At all material times John Ebner and his associates were partners in the firm of Wichita Meat and Provision Company, to whom, for brevity, we shall refer as "Shippers." Collier and Son, a co-partnership composed of named persons, were common carriers under a permit from the Railroad Commission and will be referred to as "Carriers" or "Insured." Commercial Standard Insurance Company, a corporation, issued and carried a policy of insurance relating to Carriers' license or permit to operate their trucks on the highways under the provisions of Article 911b, supra. The corporation will be referred to as "Insurer."

Shippers employed the Carriers (Collier and Son) to haul certain livestock from another county to Wichita Falls, Texas. While in transit an accident happened to one of Carriers' trucks, causing the death of some and damages to all the remainder of the livestock. Some were killed, while others were damaged to such an extent that they had to be killed at the place of the accident.

Shippers sued the Carriers to recover damages sustained and obtained a judgment for $1292.00. That judgment became final and Shippers then, as judgment creditors of Carriers, sued the Insurer, also naming Carriers as defendants, and sought judgment for $1,000.00, the maximum amount contracted by Insurer in a policy carried in favor of the Insured or Carriers. Shippers plead the provisions of the policy of insurance.

Insurer specially excepted to paragraph 2 of Shippers' petition for reasons stated therein and answered with general denial and specially to the effect that it was not bound by the judgment obtained by Shippers against Carriers because it was not a party to that suit. While Insurer's counsel, with commendable frankness, in oral argument conceded that his client was liable on Shippers' judgment, yet that judgment is contested in the briefs and we shall notice it as the occasion arises.

Insurer filed a cross action against its co-defendant, the Insured. The pleading and cross action is lengthy and to us is complicated. We construe the cross action as contending that under the provisions of the policy referred to by the pleader (1) the policy covered only livestock that were killed or died as a result of the accident with the coverage protection but did not cover livestock injured or damaged which did not die as a result thereof; (2) as between Insurer and Insured the former was not liable for a greater proportion of any loss occasioned to the contents of one truck than the sum insured on the contents of the truck bears to 100% of the value of the contents of that truck's whole cargo; and (3) the Insurer was not bound by the judgment taken by Shippers against Insured, because: (a) it was not notified of said suit and had no notice thereof and no opportunity to defend it; (b) it was the duty of Insured to notify Insurer of said suit and to place the defense of the suit in the hands of Insurer; (c) the judgment against Insured was procured with their help and consent, for all of which reasons the judgment was void. No proof of loss was made as provided by the policy. That because of the breach of the contract by Insured, Insurer could not be held for any liability or indemnity insurance and that insured is alone liable without any contribution or payment of any part by Insurer. That if any judgment should be rendered in this suit in favor of Shippers it should be solely against Insured.

Insurer further alleged alternatively that if any judgment be rendered for Shippers against it, in no event should it be for an amount in excess of $338.50 and that Insurer should recover on its cross action against the Insured for the full amount of any recovery by the Shippers against it. Prayer was in accordance with the pleading.

Shippers and Insured answered the cross action generally and by special pleas of waiver of proof of loss by Insurer, denials of fraud and collusion between Shippers and Carriers in connection with the judgment sued on.

Trial was to a jury on special issues. On motion of Shippers the court disregarded special issue No. 5 and its answer and entered judgment for Shippers for $967.00 and denied Insurer any recovery on its cross action. Hence this appeal.

We think it proper to make certain pertinent observations just here. Carriers procured their permit to operate their trucks on the highway under the provisions of Article 911b (V. A. C. S.). The material part of that statute is section 13, which provides in part as follows: Before any permit or certificate of public convenience and necessity may be issued to any motor carrier, such motor carrier shall file with the Railroad Commission insurance policies issued by some insurance company authorized by law to transact business in Texas in an amount to be fixed by the Commission, which insurance policies shall provide that the obligor therein will pay to the extent of the face amount of such insurance policies all judgments which may be recovered against the motor carrier so filing said insurance policies, based on claims for loss of, or injury to property occurring during the term of said policies and arising out of the actual operation of such motor carrier.

The policy involved in this suit and the endorsements thereon were of course in printed form with applicable blanks to be filled out. They were prepared by Insurer's agent at Wichita Falls and delivered by the agent to the Insured. The original policy and certain endorsements bear date of June 18, 1946. There is also attached an endorsement captioned "Motor Truck 'Cargo' Endorsement Form No. 102-C Railroad Commission of Texas Revised 1941 and Amended July 7, 1941, No. 388," which last mentioned endorsement is dated June 27, 1946. We shall notice this endorsement again and refer to it as "Endorsement 388."

To be better understood, when we hereafter refer to provisions in the "Original Policy" it shall be understood to mean the policy and its endorsements prior to the time Endorsement 388 was attached nine days later. The last mentioned endorsement was added by the Railroad Commission, with its modifications, limitations and cancellations, to make the policy as a whole acceptable to the Commission in meeting the requirements of the statutes and the rules of the Commission.

Pertinent to the matters before us, the original policy was declared to be one of indemnity to the Insured in a maximum amount of $1,000.00 on the cargo of each of two specifically described trucks, for all damages for which Insured was legally liable; even this amount could, by the terms of the original policy under certain conditions, become less. This because of the following provision: "This insurance company shall in no event be liable under this policy, as respects the contents of each truck, for a greater proportion of any loss or damage than the sum hereby insured on the contents of the truck upon which the loss shall happen, bears to 100% of the value of the contents of that truck at the time of loss." We shall have occasion to refer to this provision again and will abbreviate by reference to it as the "Proportionate Loss Coverage."

As previously pointed out, this original policy was apparently presented to the Railroad Commission to authorize the renewal of Insured's permit, and it is also apparent that the Railroad Commission did not approve the policy for that purpose but added or caused to be added its Endorsement 388, which, in part, reads: "It is understood that the policy to which this en-

dorsement is attached is to be offered for filing by the named insured with the Railroad Commission of Texas as a condition precedent to the privilege to operate as a Motor Carrier within the State of Texas under the authority of a certificate of convenience and necessity or a permit heretofore issued, or which may hereafter be issued and in compliance with the provisions of Chapter 314, General Laws of the Forty-first Legislature of Texas * * *" Endorsement 388 further provided: "Coverage hereunder applies to all motor freight vehicles * * * belonging to or operated * * * in the 'for hire' transportation business of the insured whether particularly identified in this policy or not while the same are being used by the insured in the insured's business of carrying * * * property for hire * * * and coming within the terms of the Motor Carrier Law." Thus it will be noted that Endorsement 388 enlarged Insurer's liability over the provisions in the original policy which limited liability to specifically designated trucks.

Endorsement 388 further provided: "The policy covers the legal liability of the named insured for the loss of, and damage or injury to, property of any character or description, while in the possession and/or custody, actual or constructive, of the insured * * *" This paragraph also enlarges insurer's liability to periods including all the time the property is in the actual or constructive possession of the carrier rather than as limited by the original policy to the time it is on a specified truck.

This further provision is in Endorsement 388: "Anything in the policy or endorsements attached thereto to the contrary notwithstanding, it is agreed that this policy shall cover within the following limits * * *: (1) One Thousand ($1,000) Dollars for the loss of, damage or injury to, property carried on any one motor vehicle * * *" It will be noted by the last mentioned provision the maximum coverage on any one motor vehicle is $1,000.00, without any provision or condition by which the Insurer could reduce its liability in virtue of the "Proportionate Loss Coverage"

provision hereinabove set out. These two provisions are in conflict one with the other and only one of them can remain effective.

Endorsement 388 further provides: "It is also understood, anything in the policy to the contrary notwithstanding, that the *insured* (clearly meaning insurer) herein will pay within limits expressed in this endorsement * * * all damages which may be recovered against the insured, based on the claims for loss of or damage to property during the term of the policy arising out of the actual operation of such motor freight vehicle * * * without regard to the solvency or insolvency of the insured, * * *"

Again, Endorsement 388 further provided: "Any provision, either in the body of the policy to which this endorsement is attached or in any other endorsement thereon or attached thereto or which may hereafter be attached in conflict with or contrary to the provisions of this endorsement shall be deemed to be canceled hereby. But it is further understood that as between the insured and the company, this endorsement shall not affect the contract or relation existing under the policy as originally written as between the insured and the company, except the next following paragraph." (The next following paragraph pertains to cancellation and is not relevant here.)

If we properly understand the appealing Insurer's contentions under its first point of assigned error, it is, first, that the trial court erred in not entering judgment for it on its cross action against the Insured for the entire amount of $967.00 because the Insured had breached the contract by not making the proof of loss as provided in the policy; and, second, alternatively, in refusing to enter judgment for it on its cross action against the insured for "$322.-33 with proration of interest and cost, representing a proration of the value of the dead cattle covered by filed policy under its agreed terms."

The policy contains, without modifications or limitations, this language: "The loss, if any, under this policy shall be immediately reported in writing with full

particulars to the Company, or to the agent of the Company issuing this policy. Failure to file a sworn proof of loss within three months of date of loss invalidates claim." It is not contended that any sworn written statement purporting to be a proof of loss was ever made by Insured. But the Insured plead waiver by Insurer, alleging the facts relied upon, and upon competent testimony the jury found: (1) One of the carriers notified the agent of Insurer of the accident shortly after it occurred; (2) Insurer made an investigation of the accident immediately after it occurred; (3) Insurer had actual knowledge of the accident within ninety-one days after it occurred and acquired through its agent the place, the facts and circumstances surrounding the accident and the number and value of cattle killed as well as those necessarily afterwards killed by reason of the accident; and (4) the agent of Insurer within ninety-one days after the accident and loss told Stean Collier (one of the Insured) that he would attend to all matters necessary in connection with such loss and adjustment of same and "thereby lulled Collier and Son into the belief that further proof of loss was not required."

 "Proof of loss" when provided for in a policy is generally necessary but it is such a matter as may be waived by words or applicable conduct. 24 Tex.Jur., pp. 1109-1110, sec. 291. The facts involved in some of the cases cited in the above compendium are very similar to those before us. Under the pleadings of waiver, the testimony and the jury's findings, none of which are assailed by Insurer, we think the trial court was well within his province when he found that proof of loss had been waived.

 The second or alternative phase of Insurer's first point asserts in effect that the court erred in not rendering judgment for it on its cross action against Insured for $322.33 with prorated interest and cost, under the provisions of what we have called the "Proportionate Loss Coverage" in the policy. The value of the cargo was $3,000.-00. (As we view Insurer's contention it intended to claim it should have recovered against insured two-thirds of the $967.00 judgment by its cross action.) As we have previously pointed out, the provision relied upon is found in the original policy before Endorsement 388 was attached at the instance of the Railroad Commission. Endorsement 388 made definite that Insurer's liability was the amount of the judgment creditor's claim not to exceed $1,000.00 on the load of each truck. In this case the judgment creditor's claim was $967.00. No provisions are found in Endorsement 388 for a less liability by reason of any contingency. Endorsement 388 further provided, in substance, that any provision in the original policy in conflict with or contrary to its provisions is canceled. It seems clear to us that the "Proportionate Loss Coverage" provision in the original policy is in conflict with and contrary to the unqualified maximum coverage provided in Endorsement 388 and therefore was canceled by the express provision of the endorsement. Nor do we believe that the provision in the endorsement to the effect that such endorsement does not affect the contract or relation existing under the original policy between Insured and Insurer abrogates the cancelling effect upon the provision relied upon by the Insurer. If it was canceled, then whatever is meant by the added proviso would not tend to reinstate it.

 It is the universally accepted rule of construction in such cases as this, that an instrument will be viewed and considered in its entirety and effect will be given to all parts thereof if it can consistently be done. But in instances like this, where there are conflicts and ambiguities, we fail to see how we can recognize the cancellation by the Railroad Commission of those parts of the original policy in conflict with its Endorsement 388 and at the same time allow them to remain effective. To us, one is repugnant to the other and both cannot stand. Insurer prepared and proposed this instrument as a whole, and under recognized applicable rules of law it will be strictly construed against Insurer and liberally in favor of Insured. American Fidelity

&. Casualty Co., Inc. v. Williams, Tex.Civ. App., 34 S.W.2d 396, error refused.

In support of its contention, Insurer cites and relies upon Wheeler v. American Fidelity & Casualty Co., 5 Cir., 164 F.2d 590. From the brief opinion it is difficult to tell just what provisions of the policy of insurance were involved, but .it is made clear that insured carried a policy which gave him no protection in a named county. He had an accident in that county and paid an agreed amount as damages resulting from the accident; he then sued the insurer for reimbursement to the extent of the amount he had paid. Recovery was denied. We fail to see the analogy between that and this case.

By second point it is claimed that the trial court should have decreed that the total loss to the Shippers should fall upon the Insured and that the court should have rendered judgment directly against Insured, or in turn give judgment in favor of Insurer against Insured for the full amount on its cross action. Third point complains because the trial court did not give effect to what we have called the "Proportionate Loss Coverage" provision in the policy. These two points only raise in another way what was claimed in first point, and what we have said under first point is applicable to points two and three.

Fourth point claims error of the trial court in disregarding special issue 5 and its answer on motion of Shippers and entering judgment on the remainder of the verdict. Special issue 5 related to waiver by Insurer of proof of loss; it appropriately inquired if Insurer had denied liability prior to the time Shippers sued and obtained judgment against Insured, and the jury answered in the negative. There are numerous ways in which an insurer may waive the necessity of making formal proof of loss, one of which is by denying liability prior to the expiration of the time in which proof of loss is required; but it does not follow that in every case where waiver is claimed, the party is required to prove every act which would tend to establish waiver. We have previously pointed out the findings of the jury on the issue of

waiver which we consider sufficient to justify the court's finding thereon, and when in response to special issue No. 5 the jury found the particular ground of waiver embraced therein did not exist, we think the trial court was justified in disregarding that issue and its answer as being immaterial.

Fifth point is in some respects a duplicate of the first phase of point one. In fifth point it is claimed that the entire judgment of $967.00 should have been adjudged against the Insured and not against the Insurer, for two reasons: (a) Because Insured breached the contract of insurance by failing to make proof of loss, and (b) in failing to yield to Insurer its reserved right in the policy of conducting and controlling the defense in the original suit between Shippers and Insured.

We have already discussed the matter of failure to furnish proof of loss and now notice subdivision (b) above.

■ There is a provision in the policy which reads: "If legal proceedings be taken to enforce a claim against the Assured as respects any such merchandise, the Company (insurer) reserves the right without expense to the Assured to conduct and control the defense in the name and on behalf of the Assured." The jury found in response to submitted issues: 7b. Insurer had notice that Shippers were going to file suit against Insured. 8. Insurer did not offer to conduct or control said suit. 11. Insurer had notice of the pending suit between Shippers and Insured. 13. Attorneys of Carriers (Insured) did not wilfully fail to permit the Insurer to conduct and control the suit between Shippers and the Insured. These issues and answers were not challenged by Insurer upon any ground. The language of the policy amounted to an optional right reserved by Insurer; it does not appear that it ever attempted to exercise that option nor that it was in any way prevented from doing so. There is no merit in the contention.

Point six asserts error because Shippers' judgment against the Carriers (Insured) was not binding on the Insurer (it not

974

being a party to that suit) and therefore the trial court erred in refusing to sustain Insurer's special exception No. 1 to that part of the petition in the instant case which pleaded that judgment as a basis for this action, and further erred in permitting Shippers to introduce that original judgment into the evidence.

■ The failure of the Shippers to make Insurer a party to their suit against the Insured was proper; Insurer was neither a proper or necessary party to that suit. Grasso v. Cannon Ball Motor Freight Lines, 125 Tex. 154, 81 S.W.2d 482. The cited authority holds that the shipper had no cause of action against the insurer until he first obtained judgment against the insured or carrier. Section 13 of Article 911b, Vernon's Anno.Civ.St., provides that the insurer in such cases as this is liable in a suit on the judgment against the carrier. The instant suit was based on the judgment against the carrier, therefore it was proper and perhaps necessary to plead it and it was not error to refuse to sustain an exception to such pleading nor to permit proof of its existence.

Point eight complains because the trial court entered judgment in the instant case based upon the existence of the judgment by Shippers against the Insured, because that judgment was not binding on Insurer since it was in no way a party thereto. We overrule this point for the reasons stated under sixth point.

■ In point seven Insurer complains because the trial court refused to permit it to introduce in evidence its "Exhibit A" which purports to be the court reporter's transcript of the testimony taken at the trial of the case between the Shippers and the Insured, which case resulted in the judgment relied upon in the instant case. The trial court ordered that Insurer's "Exhibit A" be sent up to this court with the record. The transcript was offered in evidence at a time when Insurer was attempting to show that there was no real controversy between Shippers and Insured. The purported transcript contained at its beginning the style and number of the case, the Judge before whom it was tried and the names of attorneys whom the reporter seems to have concluded represented the respective parties. Objections to its introduction included that the reporter's statement thereon as to whom the attorneys represented was a conclusion of the reporter, and without further identification of the document by the court reporter or any other person, its contents presented hearsay and at most as such, the document was not the best evidence of the testimony adduced. Objections were sustained. The court reporter was not offered to identify the transcript either from his memory or his shorthand notes; nor was it made to appear that the witnesses whose testimony was purported to be shown were either dead or outside the jurisdiction of the court. In fact the exhibit shows that named witnesses testified and we observe by the record before us that the same witnesses testified in the instant case. We think the document or transcript as offered was inadmissible under authority of Texas & N. O. R. Co. v. Williams, Tex.Civ.App., 178 S.W. 701 and Combest v. Wall, Tex.Civ.App., 115 S.W. 354, error refused.

■ Point nine complains, substantially, because the trial court did not enter judgment in this case against insured for the entire amount of Shippers' damages, based upon the theory that there was no bona fide controversy between Shippers and the Insured when the former obtained judgment against the latter. Insurer plead and attempted to prove fraud, collusion and bad faith in connection with that suit. In response to special issue 15 the jury found that there was no fraud perpetrated upon Insurer by either of the parties to the suit between Shippers and Insured. Insurer does not challenge that issue and its answer and we think it was sufficiently supported by the competent testimony.

Nothing we have said in this opinion should be construed to mean that our conclusions would have been different as to Insurer's liability and relief sought by it if the jury had found that Insured had

breached their insurance contract either by failing to make proof of loss or that Insurer had not waived the making of proof of loss or that Insured had refused to permit Insurer to conduct and control the trial of the original case between Shippers and Carriers. These questions are not before us for determination and we do not pass upon them expressly or impliedly. We have endeavored to confine this already too long opinion to the points raised by the appealing Insurer and the record before us.

Our final conclusions are that there are no reversible errors disclosed by the record, that all assigned points should be overruled and the judgment of the trial court affirmed. It is so ordered.