COMMERCIAL STANDARD INSURANCE COMPANY V.
JOHN EBNER ET AL.

No. A-2450. Decided March 1, 1950.
Rehearing overruled March 29, 1950.
(228 S. W., 2d Series, 507.)

*Milburn E. Nutt,* of Wichita Falls, for petitioner.

It was error for the lower courts to deny petitioner any recovery on its cross action against the carriers based on the grounds of the limitation of liability set forth in the policy, which clause should not stand. American Fid. & Guar. Co. v. Williams, 34 S. W. 2d 396; Wheeler v. Am. Fid. & Guar. Co., 164 Fed. 2d 590.

*Geo. A. Smoot* and *J. R. Ogle,* of Wichita Falls, for respondent.

MR. JUSTICE HART delivered the opinion of the Court.

Collier & Son, a partnership operating a commercial truck line under a certificate issued by the Railroad Commission, secured from Commercial Standard Insurance Company a policy of insurance in the amount of $1,000.00 in compliance with the provisions of Art 911b, Section 13, V. A. C. S., covering liability for loss in livestock while being transported by Collier & Son. John Ebner and others, composing the partnership of Wichita Meat & Provision Company, shipped cattle of the total value of $3,000.00 in one of the Collier trucks, and in the course of such transportation suffered a loss of cattle in the sum of $967.00. Ebner and his partners sued Collier & Son for their loss and judgment was rendered for the plaintiffs. They then sued on the judgment, naming the insurance company and Collier & Son as defendants. The insurance company filed an answer and also a cross action against Collier & Son, in which it asserted that under the terms of the insurance policy it was entitled to judgment over against Collier & Son for all or at least a portion of any sums which it would be forced to pay to the shippers. Judgment was rendered for the shippers against the insurance company and the insurance company was denied all relief on its cross action against the motor carrier. This

judgment was affirmed by the Court of Civil Appeals. 223 S. W. (2d) 968.

The sole question raised by the application for writ of error involved the rights of the insurance company against the motor carrier, all grounds for contesting the liability of the insurance company to the shippers being expressly abandoned. The decision of this question requires a construction of Section 13 of Article 911b, which reads in part as follows:

"Sec. 13. Before any permit or certificate of public convenience and necessity may be issued to any motor carrier and before any motor carrier may lawfully operate under such permit or certificate as the case may be, such motor carrier shall file with the Commission bonds and/or insurance policies issued by some insurance company including mutuals and reciprocals or bonding company authorized by law to transact business in Texas in an amount to be fixed by the Commission under such rules and regulations as it may prescribe, which bonds and insurance policies shall provide that the obligor there will pay to the extent of the face amount of such insurance policies and bonds all judgments which may be recovered against the motor carrier so filing said insurance policies and bonds, based on claims for loss or damages from personal injury or loss of, or injury to property occurring during the term of said bonds and policies and arising out of the actual operation of such motor carrier, and such bonds and policies shall also provide for successive recoveries to the complete exhaustion of the face amount thereof and that such judgments will be paid by the obligor in said bonds and insurance policies irrespective of the solvency or insolvency of the motor carrier, * * *."

The insurance policy contained the following provision which is relied on by the insurance company as the basis of its claim:

"This Insurance Company shall in no event be liable under this policy, as respects the contents of each truck, for a greater proportion of any loss or damage than the sum hereby insured on the contents of the truck upon which the loss shall happen, bears to 100% of the value of the contents of that truck at the time of loss, but in no case to exceed the amount of insurance on the contents of that truck."

Since the sum was $1,000.00 and the value of the contents of the truck at the time of the loss was $3,000.00, the insurance company contends that under the provision just quoted the proportion of the loss for which it is liable (as between it and the

motor carrier) is one-third, or $322.33, and that it is entitled to recover over against the motor carrier the balance or $644.67.

The motor carrier's reply is that the quoted provision of the policy is invalid because it conflicts with Article 911b, Section 13, and the endorsement on the policy, required by the Railroad Commission, which reads in part as follows:

"Anything in the policy or endorsements attached thereto to the contrary notwithstanding, it is agreed that this policy shall cover within the following limits unless greater limits are specified in the policy or endorsement attach (sic) thereto: (1) one thousand ($1,000) dollars for the loss of, damage or injury to property carried on any one motor vehicle (truck and/or trailer); * * *"

"It is also understood, anything in the policy to the contrary notwithstanding, that the insured herein will pay within limits expressed in this endorsement, unless greater limits are specified in the policy or endorsement attached thereto in which event the greater limits shall apply, all damage which may be recovered against the insured, based on the claims for loss of or damage to property during the term of the policy arising out of the actual operation of such motor freight vehicle (truck and/or trailers) or while such property is in the actual or constructive possession and/or custody of the insured without regard to the solvency or insolvency of the insured, and this policy shall not be exhausted by one recovery but successive recoveries may be had hereunder, and the payment of a claim does not reduce the amount of insurance by the sum so paid.

"Anything in the policy to the contrary notwithstanding, it is hereby agreed that in the event the insured shall abandon his permit or certificate and leave the state, a claimant asserting a claim within the provisions of said policy may file suit against the company executing such policy in a court of competent jurisdiction without the necessity of making the insured a party to said suit.

\* \* \*

"Any provision, either in the body of the policy to which this endorsement is attached or in any other endorsement thereon or attached thereto or which may hereafter be attached in conflict with or contrary to the provisions of this endorsement shall be deemed to be cancelled hereby. But it is further understood that as between the insured and the company, this endorsement shall not affect the contract or relation existing under the policy as originally written as between the insured and the company, except the next following paragraph."

32

The paragraph immediately following the last quoted part of the endorsement and referred to therein related to the insurer's right of cancellation of the policy, which is not involved in this case.

The position of the insurance company is that both the original policy and the endorsement can be given effect by imposing full liability on the insurance company in favor of the shipper, but limiting its liability as between it and the motor carrier in accordance with the quoted provisions of the policy.

We think that the statute and the endorsement required by the Railroad Commission under its authority are designed for the protection of the public and are not intended to limit the power of the motor carrier and the insurer to contract with reference to their mutual rights and obligations. The expressed object of the statute is to make sure that judgments against motor carrier shall be paid, and there is nothing in the statute which indicates that the Legislature intended that the motor carrier could not agree to reimburse the insurance company for any amounts which the insurance company might be required to pay. In fact, the statute, by expressly allowing bonds as well as insurance policies, indicates that such an agreement for reimbursement would be proper, since one of the normal incidents of a bond is the right of the surety for recourse against the principal for losses paid by it. See 9 Appleman, "Insurance Law and Practice", Section 5273. Moreover, the endorsement prescribed by the Railroad Commission expressly states that it "shall not affect the contract or relation existing under the policy as originally written as between the insured and the company," indicating clearly that the purpose of the endorsements was to guarantee protection to the public but not to alter the rights of the insurance company and the motor carrier which are exclusively against each other.

This conclusion is in accord with the holding of the Circuit Court of Appeals in Wheeler v. American Fidelity & Casualty Co., 5 Cir. 164 Fed. 2d 590, which also involved a construction of Article 911b, Section. 13. The policy in that case had on it an endorsement that the motor carrier would not operate in certain counties, including Dallas County. In violation of this agreement, the carrier operated there and a loss occurred. The insurance company paid for the loss, and then sued the motor carrier for reimbursement. The court held that the purpose of the statute and the endorsements required by the Railroad Commission was to protect the public, and that the insured should reimburse the insurance company for the loss that it had paid.

We have carefully considered the cases cited by the respondents: Grasso v. Cannon Ball Motor Freight Lines, 125 Texas 154, 81 S. W. (2d) 482; American Fidelity & Casualty Company v. Williams, Tex. Civ. App., 34 S. W. (2d) 396, writ refused; American National Insurance Co. v. Ingle, Tex. Civ. App., 129 S. W. (2d) 426 (affirmed 137 Texas 189, 152 S. W. (2d) 1098, 136 A. L. R. 1325); Elliott v. Lester, Tex. Civ. App., 126 S. W. (2d) 756; National Mutual Casualty Co. v. Lowery, 136 Texas 188, 148 S. W. (2d) 1089; Seaton v. Pickens, 126 Texas 271, 87 S. W. (2d) 709, 106 A. L. R. 512; and United Service Automobile Ass'n. v. Miles, 139 Texas 138, 161 S. W. (2d) 1048. None of these cases decide the question now before us, and their holdings are all consistent with the conclusion we have reached. The provisions of the insurance policy in this case are unambiguous and can all be given effect in the way we have indicated. No case that has come to our attention except Wheeler v. American Fidelity & Casualty Co., supra, involves the question of the right of the insurance company to reimbursement from the motor carrier.

■ The judgments of the District Court and the Court of Civil Appeals are reversed in part and the judgment is rendered in in favor of petitioner on its cross action against the respondents, Collier & Son, for $644.67, together with interest and costs in this Court; but costs in the lower courts are adjudged against petitioner. Rule 501, T. R. C. P. In all other respects the judgments of the lower courts are affirmed.

Opinion delivered March 1, 1950.

Rehearing overruled March 29, 1950.