578 F.2d 1026
 Nancy RIDGWAY, guardian of the Estates of David Ridgway and
Mary Ellen Ridgway, Plaintiff-Appellee, Cross-Appellant,
v.
GULF LIFE INSURANCE COMPANY, a corporation,
Defendant-Appellant, Cross- Appellee,
v.
RANGER INSURANCE COMPANY, Defendant-Appellee,
John Lee Holcombe et al., Defendants.
 No. 76-4193.
 United States Court of Appeals,
Fifth Circuit.
 Aug. 23, 1978.
Rehearing and Rehearing En Banc Denied Oct. 5, 1978.
 
 Royal H. Brin, Jr., Dallas, Tex., for defendant-appellant, cross-appellee.
 Kearby Peery, Wichita Falls, Tex., R. Vernon Coe, Larry L. Gollaher, Dallas, Tex., for Ranger Ins.
 Bradie E. Richie, Wichita Falls, Tex., for J. Holcombe.
 W. Kelvin Wyrick, Texarkana, Tex., for Barry Trucking Co.
 Appeals from the United States District Court for the Northern District of Texas.
 Before GODBOLD, SIMPSON and MORGAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Fatal injuries were sustained by the Ridgway plaintiffs' decedent on August 8, 1972, in a Texas highway collision with an over-the-road Barry Trucking Company truck driven by John Holcombe,[1] Barry Trucking Company's driver-employee.
 
 
 2
 After verdicts and judgments for substantial damages in favor of the Ridgways, Barry Trucking Company's liability insurance carrier, Gulf Life Insurance Company, refused to pay the major portion of the judgments. The Ridgways, Pennsylvania residents, brought a garnishment proceeding in federal court based on the Texas Statute, and under that court's diversity jurisdiction. Gulf impleaded Ranger Insurance Company, which carried an "umbrella" liability policy insuring Barry Trucking. The primary contention of Gulf was that Holcombe was not an "insured" under the terms of Barry Trucking Company's policy with it (because its policy excluded coverage of the owner of a non-owned vehicle (see Note 1, supra), and that the judgments were the liability of Ranger Insurance Company under its "umbrella" policy. Gulf sought refunds from Ranger of the amounts it had paid and the unpaid portions of the Ridgway judgments.
 
 
 3
 There were no contested factual issues, and the district court decided this primary question, and other legal issues involved, upon motions for summary judgment, denying Gulf's motion, and granting that of Ranger. The district court's well-reasoned and complete memorandum opinion is attached to this opinion as "Appendix A". We adopt it as the basis for our affirmance of the judgment below.
 
 
 4
 AFFIRMED.
 
 APPENDIX A
 
 5
 NANCY RIDGWAY, Guardian of the Estates of DAVID RIDGWAY and MARY ELLEN RIDGWAY, Plaintiff
 
 
 6
 v.
 
 
 7
 GULF INSURANCE COMPANY, JOHN LEE HOLCOMBE, RANGER INSURANCE COMPANY and BARRY TRUCKING COMPANY, Defendants
 
 
 8
 Civ. A. No. CA-7-76-3.
 
 
 9
 United States District Court, N. D. Texas, Wichita Falls Division.
 
 
 10
 Oct. 6, 1976.
 
 ORDER AND MEMORANDUM OPINION
 
 11
 ROBERT M. HILL, District Judge.
 
 
 12
 The motion of defendants Gulf Insurance Company (Gulf) and Barry Trucking Company (Barry) and the motion of defendant Ranger Insurance Company (Ranger) for summary judgment came on for consideration before the Honorable Robert M. Hill, United States District Judge. The court has considered the motions, the arguments and briefs of counsel, and is of the opinion that the motion of Gulf and Barry should be denied and that the motion of Ranger should be granted in part. The court bases this ORDER on the following conclusions of law:
 
 
 13
 1. As a matter of law, Holcombe was covered as an "insured" under Ranger's policy:
 
 
 14
 ( a) Ranger is collaterally estopped to assert that Holcombe was not an employee of Barry and thus covered under DEFINITIONS Sec. 1(A) of its policy. This court found that Holcombe was an employee in the case from which the plaintiff's judgment arises. Ranger had timely notice of all the suits arising out of this accident, including the present suit and the fact that the judgment sought exceeded the limits of the underlying policy. Ranger negotiated some of the settlements in related cases on behalf of itself and Gulf. It was afforded notice and an opportunity to participate in the defense of the present case but chose to let Gulf handle it alone.
 
 
 15
 The principle is well-established that if a liability insurer with notice of a suit and duty to defend it fails to do so, it is bound by the judgment in that suit. It may not relitigate material fact issues which place that cause of action within the coverage of the policy. Maryland Casualty Co. v. Mitchell, 322 F.2d 37 (5th Cir. 1963). The briefs of Gulf cite multitudinous cases to the same effect. Although Ranger had no duty to defend under its contract, the court is of the opinion that this makes no difference with regard to the underlying principle of estoppel by judgment involved. Ranger had the right to defend and had adequate notice of a claim under the terms of this policy. While a liability insurer in such circumstances is not necessarily a formal party to the suit (and in most states, including Texas, cannot be made so), a liability insurer is not, as Ranger well knows, a stranger to the judgment. Ranger Insurance Co. v. Rogers, 530 S.W.2d 162 (Tex.Civ.App. Austin 1975). The contractual relation of liability and social policy supply the necessary privity of party between insured and insurer to bind the latter.
 
 
 16
 ( b) Even if there were no collateral estoppel, Texas law would require Holcombe to be treated as an employee of Barry. There is no factual dispute that Holcombe operated the truck under an oral lease to Barry. Texas law requires that any lease of a commercial motor vehicle vest full and complete control and supervision of the operation of the vehicle in the lessee. Tex.Civ.Stat.Ann. art. 6701c-1 sec. 4 (1969). If the parties do not so provide, courts will imply it in the contract as a matter of law. Greyhound Van Lines, Inc. v. Bellamy, 502 S.W.2d 586 (Tex.Civ.App. Waco 1973, no writ). Texas law could not be plainer that the "independent contractor" defense is not available for commercial motor vehicles in these circumstances.
 
 
 17
 2. As a matter of law, Ranger is legally obligated for punitive damages within the limits of its policy. Ranger agreed "(t)o indemnify the insured for all sums which the insured shall be obligated to pay by reason of the liability (A) imposed on the insured by law . . . ." This unqualified and comprehensive wording necessarily includes both actual and punitive damages. Any other construction would twist the language of the policy.
 
 
 18
 The question remains, however, whether such a contract violates the public policy of the State of Texas. The court considers this question foreclosed by Dairyland County Mutual Ins. Co. v. Wallgren, 477 S.W.2d 341 (Tex.Civ.App. Fort Worth 1972, writ ref'd, n. r. e.); and Home Indemnity Co. v. Tyler, 522 S.W.2d 594 (Tex.Civ.App. Houston (14th Dist.) 1975, writ ref'd, n. r. e.). Dairyland held that a policy which was required by the Texas Motor Vehicle Safety Responsibility Act, Tex.Civ.Stat.Ann. art. 6701h (1969), and which was construed to cover punitive damages, did not offend Texas public policy. As pointed out in Ranger's brief, its policy is not prescribed by the Texas Insurance Department. But the language of the policy in Dairyland And Ranger's policy are substantially similar, and the court cannot conceive any rationale for distinguishing the two situations: i. e. a reason why it did not offend any Texas policy of discouraging wrongdoers to relieve a drunk driver of punitive damages in Dairyland but would offend some such policy to relieve a drunk driver of punitive damages in the instant case. There may be sound policy reasons why some states have not allowed punitive damages to be covered by liability insurance, e. g. Northwestern National Casualty Co. v. McNulty, 307 F.2d 432 (5th Cir. 1962) (interpreting Florida law). Texas, however, apparently does not share this policy, and that ends the inquiry.
 
 
 19
 3. As a matter of law, Ranger has no liability to Gulf Insurance for sums paid or to be paid by Gulf, as either actual or punitive damages, in this suit. The court is mildly mystified as to Gulf's theory of recovery in this cross-action. Gulf seems to say that its policy did not cover Holcombe but that Ranger's policy did cover Holcombe; that Gulf paid the actual damages in this case solely on behalf of Barry, which was liable for Holcombe's negligence under the theory of respondeat superior; and that Gulf is therefore entitled as a subrogee of Barry to recover from Ranger for these damages paid on Holcombe's behalf. Assuming, arguendo, that all this were true, Gulf ignores the scope of Ranger's liability for Holcombe's negligence under the insurance contract.
 
 
 20
 Ranger's umbrella policy unambiguously requires all persons insured thereunder to obtain underlying insurance. If Holcombe is covered under Ranger's policy as an "insured," he is obligated to obtain comprehensive auto liability insurance for bodily injury to the limits of $100,000.00 per person and $500,000.00 per accident. If he fails to carry such underlying insurance, Ranger will be liable only as if he had carried it. The policy provision titled MAINTENANCE OF UNDERLYING INSURANCE is clear and unambiguous. It doesn't matter vis-a-vis Ranger's liability for Holcombe whether Holcombe was insured under Gulf's policy or not; Ranger is liable as if Holcombe were insured by Gulf.
 
 
 21
 Gulf has urged in its most recent brief that Holcombe did not procure underlying insurance but was therefore covered under another clause in Ranger's policy providing a retained limit of $25,000 for losses not covered by the underlying insurance contract. This construction would reduce Ranger's policy to gibberish. Holcombe was required to obtain underlying insurance; Ranger was not any more liable if Holcombe breached this duty; but if he did breach it Ranger would gratuitously extend another $75,000 of coverage to him.[1]
 
 
 22
 The purpose of the $25,000 retained limit is to extend different kinds of coverage than the existing liability insurance provided by the underlying policy and the extra limits of the umbrella policy. The textbook explanation of umbrella insurance that Ranger's counsel has cited to the court rationally explains this lower retained limit as applying to losses of a different character than the more typical losses covered by liability insurance. Thus, the umbrella policy has two functions: 1) to provide for a higher limit of liability for those losses typically covered by liability insurance general liability and comprehensive auto liability for bodily injury and property damage; 2) to provide for some coverage of those less common losses not typically covered by liability insurance e. g., malpractice liability, advertiser's liability, blanket contractual liability, world-wide operations liability, etc.
 
 
 23
 Therefore, Ranger has no liability to indemnify Gulf under the terms of Ranger's insurance contract. Ranger is liable only for the $5,000 in damages which exceeds the lower limit of its policy for bodily injury.
 
 
 24
 4. As a matter of law, Holcombe was insured under the Gulf policy. The Texas Supreme Court has set out the pertinent principles of construction for this policy:
 
 
 25
 (1) An insurance policy will be construed strictly against the insurer; (2) when the terms of an insurance contract are capable of two or more constructions and under one a recovery is allowable and under the other it is denied, the construction which permits recovery will be given the policy; (3) forfeitures of insurance coverage are not favored; and (4) if a fair and reasonable construction of an insurance contract will permit, a meaning will be given to its language that effectuates a contract of insurance rather than defeats it.
 
 
 26
 Kelley v. American Insurance Company, 160 Tex. 71, 325 S.W.2d 370 (1959). This policy is strongest when considering words of exception and limitation. Ramsay v. Maryland American General Ins. Co., 533 S.W.2d 344, 349 (Tex.1976).
 
 
 27
 (a). Gulf first asserts that the section of its policy titled PERSONS INSURED excludes ". . . (ii) the owner or lessee (of whom the named insured is a sub-lessee) of a hired automobile. . . ." However, the same section specifically includes as "insured" ". . . (c) any person while using an owned automobile or a hired automobile with the permission of the named insured (Barry), provided his actual operation or . . . his actual use thereof is within the scope of such permission . . .."
 
 
 28
 The court finds no necessary conflict between these two clauses. Gulf probably meant to eliminate coverage of the owner of a nonowned vehicle for some condition of the vehicle that might give rise to liability to a third party. Gulf undoubtedly meant to insure Holcombe in his capacity as an employee. Since this construction of the apparent clauses in conflict is reasonable, and since it would grant rather than deny coverage, the construction is therefore compelled by law.
 
 
 29
 (b). Gulf next contends that, if Holcombe was covered by the basic policy, Endorsement 77 removed him from this coverage. The purpose of Endorsement 77 is to make the policy conform with obligations imposed upon the operators of motor carriers within the State of Texas by the Texas Railroad Commission.
 
 
 30
 The purpose of the endorsement must be distinguished from the purpose of the policy. The endorsement serves the statutory purpose of providing minimum liability coverage of all motor carrier operators for the protection of the general public. It is a form endorsement requiring the liability insurer to provide this minimum coverage. It is irrational to suppose that the legislature intended to prohibit motor carriers from insuring their employees, as urged by Gulf.
 
 
 31
 The language of Endorsement 77 carefully (or not so carefully) distinguishes between coverage under the endorsement and coverage under the policy. Endorsement 77 reads:
 
 
 32
 Any provision, either in the body of the policy to which the endorsement is attached or in any other endorsement thereon or added thereto now or hereafter in conflict with or contrary to the provisions of this endorsement, shall be deemed to be cancelled hereby.
 
 
 33
 Gulf's argument rests principally on this sentence and another sentence, Infra, which says that for purposes of Endorsement 77 only the named insured (Barry) is covered. Gulf interprets this as a striking coverage of employees from the basic policy. The court, however, believes that the purpose of the endorsement language quoted Supra would be clearer if the words "for purposes of coverage under this endorsement" were tacked to it, and the court so construes it. The next sentence continues:
 
 
 34
 But is further understood that this endorsement shall not affect the contract or relation existing under the policy to which this endorsement is attached, as between the Named insured and the company, except as hereinafter stated. (emphasis added).
 
 
 35
 This sentence makes no mention of the coverage provided to others insured in the policy (such as employees), besides the named insured, since the endorsement deals solely with the named insured implementing Texas statutory policy that for each motor carrier on the road there shall be at least one operator responsible for it and carrying a minimum of liability coverage.
 
 
 36
 The scope of the endorsement is made even clearer several paragraphs below where the endorsement provides:
 
 
 37
 Insuring Agreement III captioned "Definition of Insured" or the provision captioned "Persons Insured," whichever appears in this policy, is hereby eliminated As respects the coverage provided by this endorsement and it is agreed that this endorsement does not cover and shall not be construed to cover the liability of any person, firm or corporation, other than the named insured. (emphasis added).
 
 
 38
 This language is unambiguous and there is no reason to construe it as abolishing the much greater coverage in the body of the policy. In addition, such a construction would not serve the legislative policy that Endorsement 77 is intended to implement. The court also finds the discussion of Commercial Standard Insurance Company v. Ebner, 149 Tex. 28, 228 S.W.2d 507 (1950) in the brief of Ranger to be persuasive and apposite.
 
 
 39
 5. The court does not reach the legal questions of whether Ranger and/or Gulf waived their policy defenses by their conduct in this case or whether the policies of Ranger and/or Gulf should be reformed. These questions are unnecessary to the disposal of the case.
 
 
 40
 It is therefore ORDERED that the motion of Gulf for summary judgment be denied and that the motion of Ranger for summary judgment be granted in so far as Ranger's liability to the plaintiff Ridgway is limited to $5000 and Ranger is adjudged to have no liability to Gulf; Ranger's motion is otherwise denied.
 
 GODBOLD, Circuit Judge, dissenting:
 
 41
 I respectfully dissent. I believe the district court incorrectly determined that, as a matter of law, Holcombe was an insured within the Gulf policy.
 
 
 42
 As an initial matter Holcombe is within the omnibus clause[1] because he was using a hired automobile with the permission of the named insured. As the owner of a hired automobile, however, Holcombe is also within the hired-automobile exception.[2] These clauses do not conflict. Rather, the exception removes Holcombe from coverage as an insured. There would be no need for an exceptional clause if it did not have this effect. Cases with similar facts confirm this conclusion. When the owner-operator of a truck has leased the truck to another party, hired-automobile exceptions have ordinarily been given effect so that the owner-operator was not an insured under the lessee's insurance policy.[3]
 
 
 43
 Because Holcombe's truck was scheduled as a hired automobile on the Gulf policy, Ranger argues that Gulf is estopped from claiming that the truck was a hired automobile. For general principles of estoppel to apply, however, Ranger should have to prove that it actually relied, to its detriment, on the misrepresentation. Ranger has made no such showing and probably could not do so, inasmuch as it issued its umbrella policy without examining a complete copy of Gulf's policy, the underlying insurance.
 
 
 44
 I agree that Holcombe is an insured under the Ranger umbrella policy. Like Gulf's policy, Ranger's policy has a hired-automobile exception to its omnibus clause, but Ranger's policy covers Holcombe as an insured because he is an employee of Barry Trucking Inc., the named insured.[4]
 
 
 45
 Ranger argues that if Holcombe is an insured under its policy, the policy imposed on him (as an insured, though not the named insured) a duty to maintain underlying insurance, and, since Holcombe did not maintain underlying insurance, its policy should apply as if he had maintained such underlying insurance (that is, Ranger would cover only the excess). But the specific policy provision reads, "It is warranted by the Insured that the underlying policies listed in the Schedule of Underlying Insurance . . . shall be maintained in force as collectible insurance during the currency of this Policy . . . ." The Schedule lists only the Gulf policy, which was maintained in force as collectible insurance. I do not read the policy provision to establish an independent duty in Holcombe to procure any policy in addition to the policy specifically listed in the Schedule.
 
 
 46
 Thus the Ranger umbrella policy has a different coverage than the underlying insurance, Gulf's policy. It follows that the analysis of the relative rights of Gulf and Ranger will be different than the resolution the district court and the majority have reached.
 
 
 
 [1]
 The truck was titled and registered in Holcombe's name. It was used for Barry Trucking's business under a written lease agreement, a common arrangement in the trucking industry
 
 
 [1]
 The court will likewise ignore as incomprehensible Gulf's assertion that Holcombe fulfilled his obligation as an "insured" under the MAINTENANCE clause because Barry obtained underlying insurance for itself, which did not include Holcombe. Reply Brief of Barry and Gulf at 1-2. Perhaps Gulf is somehow trying to finesse the fact that its whole theory of recovery rests on Ranger's coverage of Holcombe, not Barry, under the policy
 
 
 [1]
 "Each of the following is an Insured under this insurance to the extent set forth below:
 (c) any other person while using an Owned automobile Or a Hired automobile with the permission of the Named insured, provided his actual operation . . . is within the scope of such permission . . . ." (emphasis in original, denoting defined terms).
 
 
 [2]
 "None of the following is an insured:
 (ii) The owner or lessee (of whom the Named insured Is a sublessee) of a Hired automobile Or the owner of a non-owned automobile . . . ." (emphasis in original, denoting defined terms).
 The Gulf policy makes further exclusions from coverage of insureds by means of a Long Haul Truckmen Endorsement.
 
 
 [3]
 Gilkey v. Andrew Weir Ins. Co., 291 F.2d 132, 134 (CA9, 1961); Gonzales v. National Surety Corp., 266 F.2d 667, 668-69 n.1 (CA5, 1959); Johnson v. Royal Indem. Co., 206 F.2d 561, 562 n.1, 565 (CA5, 1953): National Mut. Ins. Co. v. Liberty Mut. Ins. Co., 90 U.S.App.D.C. 362, 364, 196 F.2d 597, 599, Cert. denied, 344 U.S. 819, 73 S.Ct. 15, 97 L.Ed. 638 (1952); Longsdorf v. Tunson, 200 F.Supp. 828, 830-31 (D.Colo.1962); Chesher v. United States Cas. Co., 303 N.Y. 589, 105 N.E.2d 99, 32 A.L.R.2d 568 (1952); Shumake v. Home Indem. Co., 68 So.2d 789, 793 (La.Ct.App.1953); See Annot., 32 A.L.R.2d 572 (1953). But see Wellman v. Liberty Mut. Ins. Co., 496 F.2d 131, 136 (CA8, 1974); Citizens Mut. Ins. Co. v. Fireman's Fund Ins. Co., 234 F.Supp. 931 (W.D.Mich.1964)
 
 
 [4]
 "The unqualified word 'Insured' wherever used in this Policy, includes not only the Named Insured but also: (A) Any . . . employee of the Named Insured, while acting in his capacity as such . . .; . . . ."