Reyna, Circuit Judge, concurring.
I concur with my colleague Judge O'Malley's opinion that the Patent Trial and Appeal Board ("Board") erred in its determination that RPX's petitions for inter partes review ("IPR") are not time barred under 35 U.S.C. § 315(b).
But I also conclude that the Board erred by failing to fully address the question of whether RPX's petitions are time barred under the privity provision of § 315(b). This error constitutes an independent ground for vacating and remanding.
I. PRIVITY UNDER § 315(B)
The Leahy-Smith America Invents Act ("AIA") provides that the Patent and Trademark Office ("PTO") may not institute an IPR where the petition "is filed more than 1 year after the date on which the petitioner, the real party in interest, or privy of the petitioner is served with a complaint alleging infringement of the patent." 35 U.S.C. § 315(b) ; Pub. L. No. 112-29, § 3(b)(1), 125 Stat. 284, 287 (2011).
Neither the AIA nor the Patent Act ( 35 U.S.C. §§ 1 et seq ) defines "privity" or "privy of the petitioner." Nor has this court had ample opportunity to address the legal standards for privity under § 315(b), primarily because time bar determinations under § 315(b) were not reviewable until the en banc court recently held that "time-bar determinations under *1359 § 315(b) are reviewable by this court," and overruled earlier panel decisions to the contrary. Wi-Fi One, LLC v. Broadcom Corp. , 878 F.3d 1364, 1374 (Fed. Cir. 2018) (en banc).
In Wi-Fi One , we recognized that, as a well-established common law concept, privity under § 315(b) should be examined under the backdrop of the "cardinal rule of statutory construction that where Congress adopts a common-law term without supplying a definition, courts presume that Congress knows and adopts the cluster of ideas that were attached to the term." WesternGeco LLC v. ION Geophysical Corp. , 889 F.3d 1308, 1317 (Fed. Cir. 2018) (quoting FAA v. Cooper , 566 U.S. 284, 291-92, 132 S.Ct. 1441, 182 L.Ed.2d 497 (2012) ) (quotation marks omitted); see Wi-Fi One, LLC v. Broadcom Corp. , 887 F.3d 1329, 1335 (Fed. Cir. 2018) (" Wi-Fi One Remand ") ("Congress intended to adopt common law principles to govern the scope of the section 315(b) one-year bar."). The AIA's legislative history also recognizes the common law meanings for privity. See WesternGeco , 889 F.3d at 1317 ; Wi-Fi One Remand , 887 F.3d at 1335. Congress did not leave to the PTO's discretion to determine the legal standards for privity; it is a question well within the province of the judiciary. See McDonnell Douglas Corp. v. United States , 323 F.3d 1006, 1014 (Fed. Cir. 2003) (holding that "determination of legal standards is a pure issue of law" that we review de novo ).
Privity is a well-recognized common law concept that is primarily based on the legal relationship between parties . The general definition of privity is "[t]he connection or relationship between two parties, each having a legally recognized interest in the same subject matter (such as a transaction, proceeding, or piece of property)." Privity , Black's Law Dictionary (10th ed. 2014). The Supreme Court has noted that "[t]he substantive legal relationships justifying preclusion are sometimes collectively referred to as 'privity.' " See Taylor v. Sturgell , 553 U.S. 880, 894 n.8, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008).
The roots of privity are grounded in the general principle of due process that one is not bound by a judgment "in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." Hansberry v. Lee , 311 U.S. 32, 40, 61 S.Ct. 115, 85 L.Ed. 22 (1940) (quoting Pennoyer v. Neff , 95 U.S. 714, 24 L.Ed. 565 (1877) ). On the other side of the same coin, due process also prohibits a litigant from taking a second bite at the apple by relitigating the same case through the persona of another, its privy. See Green v. United States , 355 U.S. 184, 187, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957) (explaining that it is "deeply ingrained" in our system of jurisprudence that one should not be allowed to make "repeated attempts" to prosecute a case). Thus, due process protects both claimants and defendants from abusing the judicial system, and privity is a key safeguard of this protection.[1]
Relevant here, a person not a party to a litigation may have appeared in that litigation through the persona of another, its privy. Privity recognizes those instances where a person that was not a party in an initial litigation should be precluded from a subsequent litigation involving the same or a similar claim. See *1360 Montana , 440 U.S. at 153-54, 99 S.Ct. 970. Thus, where privity is shown to exist between a party to a second case and a party who is bound by an earlier judgment, the party to the second case-who was not a party in the first action-is also bound by the earlier judgment. Richards v. Jefferson Cty. , 517 U.S. 793, 798, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996).
In the AIA context, the privity provision of § 315(b)"prevent[s] successive challenges to a patent by those who previously have had the opportunity to make such challenges in prior litigation." WesternGeco , 889 F.3d at 1319. Congress deemed the common law principle of privity important enough that, under § 315(b), it withheld from the PTO authority to institute an IPR where the petition "is filed more than 1 year after the date on which the petitioner, the real party in interest, or privy of the petitioner is served with a complaint alleging infringement of the patent."
In this case, the question squarely before the PTO was whether non-party Salesforce.com, Inc. ("Salesforce") is a privy of appellee RPX Corporation ("RPX") such that RPX should be time barred under § 315(b) because Salesforce was served with an infringement complaint by appellant Applications in Internet Time, LLC ("AIT") more than one year prior to the filing of the IPRs. The legal standard applicable to that question is whether there exists a significant legal relationship between Salesforce and RPX that establishes privity.
The Supreme Court has provided a non-exhaustive list for examining whether the legal relationship between two parties establishes that one is the privy of the other. The list consists of six categories that create independent exceptions to the common law rule that normally forbids non-party preclusion in litigation: (1) an agreement between the parties to be bound; (2) pre-existing substantive legal relationships between the parties; (3) adequate representation by the named party; (4) the non-party's control of the prior litigation; (5) where the non-party acts as a proxy for the named party to relitigate the same issues; and (6) where special statutory schemes foreclose successive litigation by the non-party (e.g. , bankruptcy and probate). Taylor , 553 U.S. at 894-95, 128 S.Ct. 2161. The Supreme Court noted that this list of six categories is meant to provide a "framework" for considering non-party preclusion, "not to establish a definitive taxonomy." Id. at 893 n.6, 128 S.Ct. 2161. The Supreme Court did not limit the application of the framework to either real party in interest or privity; it equally applies to both. See id. at 894 n.8, 128 S.Ct. 2161 (applying in situations where "nonparty preclusion is appropriate on any ground" (emphasis added) ).
This court has recognized and applied the Taylor framework for § 315(b) time bar determinations. See WesternGeco , 889 F.3d at 1319 (listing the six Taylor categories); Wi-Fi One Remand , 887 F.3d at 1336 (holding that privity and real party in interest under § 315(b) should be examined "consistent with general legal principles," citing Taylor ). In addition, the PTO follows the caselaw from the Supreme Court and this court. See Office Patent Trial Practice Guide, 77 Fed. Reg. 48,756 (Aug. 14, 2012). The PTO's Trial Practice Guide provides that "[t]he USPTO will apply traditional common-law principles" to evaluate what parties constitute "privies" or "real parties in interest." Id. at 48,759. The Trial Practice Guide seeks to define "real party in interest" and "privity" by indicating that a real party in interest is the party that desires review of the patent or the party on behalf of which the petition was filed, while explaining that "[t]he notion of 'privity' is more expansive," encompassing legal relationships that are "sufficiently close such that both *1361 [the petitioner and the privy] should be bound by the trial outcome and related estoppels." Id .
II. THE BOARD'S DECISION
In its arguments before the Board, AIT contended that RPX's petitions should be time barred under § 315(b) because the statute "merely requires that the real party-in-interest or a privy be time barred without speaking of control." J.A. 2024 (emphasis added). AIT argued that RPX had "an unusually close relationship" with Salesforce and acted as a "proxy" or an "agent" for Salesforce-allegations that are traditionally associated with privity. See Taylor , 553 U.S. at 894, 128 S.Ct. 2161. AIT specifically cited Taylor 's "six categories that create an exception to the common law rule that normally forbids nonparty preclusion in litigation." Patent Owner's Preliminary Response at *5, RPX Corp. , IPR2015-1750 (P.T.A.B. Nov. 27, 2015). AIT further alleged that this case fit "[u]nder a [ Taylor ] category relevant here"-namely, relitigating through a proxy. Id. By linking the alleged "proxy" relationship between RPX and Salesforce to Taylor , AIT correctly understood that "proxy" is a form of privity. AIT has maintained its position throughout the IPR proceedings.
In its institution decisions and final written decisions, the Board ignored the § 315(b) privity question. Instead, it focused on the real party in interest inquiry and decided that Salesforce was not a real party of interest because RPX did not have actual control in the prior CBM proceeding. I agree with Judge O'Malley that the standard employed by the PTO in its real party in interest inquiry was impermissibly narrow and constituted error. In my view, the Board also erred by failing to address whether RPX was a privy of Salesforce.
III. PRIVITY BETWEEN RPX AND SALESFORCE
Consistent with its arguments before the Board, AIT argues on appeal that the Board committed legal error by "ignor[ing] the prohibition against a 'privy' " mandated by § 315(b). Appellant's Br. 11, 23-24. AIT argues that the Board's failure to address privity under § 315(b) constitutes legal error because "the Board exceeded the scope of its delegated authority and violated a clear statutory mandate." Id. at 18. I agree.
AIT invokes the second ground under Taylor - substantive legal relationship-by arguing that "[a]dditional relevant factors [for finding privity] include [ ] the non-party's relationship with the petitioner," id . (citing the PTO's Trial Practice Guide), and that RPX had "an unusually close relationship" with Salesforce. Id . at 20-21. AIT also alleges that RPX's petitions violated the fifth ground under Taylor -relitigate through a proxy. Patent Owner's Preliminary Response at *5, RPX Corp. , IPR2015-01750. I address these two grounds in turn.
AIT is correct that privity is based on whether there is a "substantive legal relationship" between the parties. Taylor , 553 U.S. at 894, 128 S.Ct. 2161. The substantive legal relationship inquiry focuses on the legal obligations between the parties, not between a party and a proceeding . See Institution Decision at *8, RPX Corp. , IPR2015-1750 (P.T.A.B. May 12, 2016) (basing its real party in interest determinations on "whether a non-party exercises control over a petitioner's participation in a proceeding , or whether a non-party is funding the proceeding or directing the proceeding " (emphases added) ). While "control" over a proceeding may be germane to a form of privity, the Board failed to consider whether RPX and Salesforce *1362 were in a substantive legal relationship in a broader context. This was error.
Privity between parties does not hinge on any single proceeding. It is a broader inquiry into whether the parties have a "substantive legal relationship." See Taylor , 553 U.S. at 894, 128 S.Ct. 2161. Under Taylor , "[q]ualifying relationships include, but are not limited to, preceding and succeeding owners of property, bailee and bailor, and assignee and assignor." Id . A common character of these relationships is that the two parties share a high degree of commonality of proprietary or financial interest. See In re Gottheiner , 703 F.2d 1136, 1140 (9th Cir. 1983) (holding that privity exists "when there is sufficient commonality of interest"). These forms of relationship are based on whether the relationship is anchored or based on legal obligations or commitments. For example, non-party preclusion could apply between an indemnitor and an indemnitee, or between an insurer and an insured on the basis that such relationships form privity. Intel Corp. v. U.S. Int'l Trade Comm'n , 946 F.2d 821, 839 (Fed. Cir. 1991) (holding that "an indemnification agreement, in other cases, has alone been enough to find privity"); see Ridgway v. Gulf Life Ins. Co. , 578 F.2d 1026, 1029 (5th Cir.1978) ("The contractual relation of liability and social policy supply the necessary privity of party between insured and insurer to bind the latter."). The foregoing examples have little to do with "control" over a prior or current litigation, yet privity exists.
The record before the court shows that although RPX and Salesforce are separate business entities, there exists a legal relationship between them that is defined by mutual legal obligations and commonality of interest. The record suggests that the form of substantive legal relationship between RPX and Salesforce precisely is that which defines privity.
First, RPX advertises itself as "the leading provider of patent risk solutions, offering defensive buying, acquisition syndication, patent intelligence, insurance services, and advisory services." J.A. 73-74. RPX's business model involves buying patents from companies and licensing them back. Hence, one form of the legal relationship between RPX and Salesforce is that of patentee and licensee.
Second, RPX provides insurance against non-practicing entities ("NPE") patent infringement suits to clients who purchase insurance policies.[2] This suggests another form of the legal relationship between RPX and Salesforce as that of insurer and insured.[3]
Third, RPX has advertised that its "interests are 100% aligned with those of [its] clients," it could "serve as an extension of a client's in-house legal team," and it could "facilitat[e] challenges to patent validity." J.A. 28, 31, 71. Thus, another form of the legal relationship between RPX and Salesforce is an attorney-client relationship.
To be clear, the existence of any one of these forms of legal relationships alone does not necessarily establish privity.
*1363 However, if the extent of the legal obligations between the parties (i.e., RPX and Salesforce) is such that the parties share a high degree of commonality of proprietary or financial interest, privity is established and § 315(b) bars the institution of the IPR petitions. Indeed, given the circumstances, any single one of the forms could suffice to establish privity under § 315(b).[4] In this case, when viewed in aggregate, the record evidence suggests sufficient basis of privity, such that the PTO erred in ignoring the issue of privity.
The record also suggests that RPX may have acted as a proxy/representative for Salesforce, which independently establishes privity under the Taylor framework. See Taylor , 553 U.S. at 895, 128 S.Ct. 2161 ("[A] party bound by a judgment may not avoid its preclusive force by relitigating through a proxy.").
RPX's Vice President Mr. Chuang states that "the services RPX provides Salesforce do not include filing IPRs." J.A. 96, 101. The record, however, suggests that RPX may have acted in a proxy/representative capacity. The invalidation of AIT's patents-in-suit would directly benefit Salesforce because Salesforce was sued by AIT for infringing the same patents. RPX, as advertised, provides complementary patent risk solutions to its clients, "including the facilitation of challenges to patent validity , coordinating prior art searches, and other services intended to improve patent quality and reduce expenses for our clients." J.A. 31 (emphasis added). RPX's past practice included filing IPRs on behalf of its clients. See Denial of Institution at *9-10, RPX Corp. v. VirnetX, Inc. , IPR2014-0171 (P.T.A.B. June 23, 2014) (and six other related proceedings). IPR is one form of "challenge[ ] to patent validity."
RPX stated to the Board that "[e]ven if it were true that RPX's services to Salesforce involved the filing of IPRs, that alone would not make Salesforce an RPI [i.e., real party in interest]." J.A. 103. This is incorrect. Relitigation through a proxy is itself an independent ground to establish privity. See Taylor , 553 U.S. at 895, 128 S.Ct. 2161. If RPX was indeed contractually obligated to file the IPRs on behalf of Salesforce, then privity exists and the petitions should be time barred. See Pac. Gas & Elec. Co. v. United States , 838 F.3d 1341, 1350 (Fed. Cir. 2016) (finding that "party standing outside of privity by contractual obligation stands in the shoes of a party within privity"). This and other arguments by RPX concerning real party in interest were effective in drawing the attention of the PTO away from privity and to focus on real party in interest. It caused the PTO to lose sight of the "more expansive" notion of privity. See 77 Fed. Reg. at 48,759.
When viewed through the lens of the more expensive notion of privity, the record clearly suggests that RPX may have acted as a proxy on behalf of Salesforce. The record contains evidence suggesting that the interests of RPX and Salesforce are aligned. Salesforce is a significant client for RPX.[5] They are not competitors: Salesforce is a software company and RPX
*1364 holds itself out to the public as a patent risk management company. Both Salesforce's prior CBM petitions and RPX's IPR petitions sought to invalidate the same patents owned by AIT. RPX claims to have independent reasons for pursuing the IPR petitions, but there is no evidence to show that RPX's interests conflict with Salesforce's interests. To the contrary, RPX advertises that its "interests are 100% aligned with those of [its] clients," and that it "serve[s] as an extension of a client's in-house legal team." J.A. 28, 31, 71.
Thus, the record reveals that Salesforce was more than a bystander to RPX's filing of these IPR petitions. Salesforce was a preexisting client of RPX, representing a significant and growing revenue stream. Invalidation of the patents-in-suit would directly benefit Salesforce. RPX advertised providing insurance services against patent infringement claims brought by NPEs. These are indicators of privity. And given RPX's documented history of acting as a proxy on behalf of its clients in filing IPR petitions, coupled with RPX's offering of patent validity challenges to its fee-paying members, AIT proffered sufficient concrete evidence to suggest that RPX was in privity with Salesforce.
I would remand with instruction that the Board thoroughly review whether privity exists between RPX and Salesforce, including application of all of the Taylor factors. In addition, while the Board partially granted AIT's motion for additional discovery into "whether Petitioner [RPX] should have identified Salesforce as an RPI in this proceeding," it denied AIT's request for discovery into "[d]ocuments discussing any efforts by RPX to shield its clients from being named as real parties in interest in inter parte [sic ] reviews and covered business method patent reviews." J.A. 972, 1069. The § 315(b) time bar inquiry is broader than the real party in interest inquiry, and the Board should consider new motions for additional discovery.
IV. CONFLATION OF § 315(B) WITH § 312(A)(2)
On remand, the Board should not repeat its error of conflating § 315(b) with § 312(a)(2). Sections 315(b) and 312(a)(2) entail distinct, independent inquiries. Section 312(a)(2) requires that a petition may be considered only if "the petition identifies all real parties in interest." Section 312(a)(2) is akin to a pleading requirement that can be corrected, and this court has noted that "the Director [of the PTO] can, and does, allow the petitioner to add a real party in interest." Wi-Fi One , 878 F.3d at 1374 n.9. Section 312(a)(2) does not act as a prohibition on the Director's authority to institute. In contrast, § 315(b)"sets limits on the Director's statutory authority to institute" if a petition is time barred. Id. at 1374.
This court has recognized the difference between the two statutory provisions and has warned that § 315(b) should not be "conflat[ed]" with § 312(a)(2).[6] Id. at 1374 n.9. I suspect that this is what happened in this case.
Despite AIT's specific allegation that RPX should be time barred under § 315(b), the Board framed the entire issue as "whether Petitioner has identified all RPIs"-a § 312(a)(2) determination. J.A. 1395 (institution decisions); see id. at 1396 (summarizing that "we must determine *1365 whether Salesforce should have been identified as an RPI in this proceeding"); id. at 1402-03 (concluding that "we are not persuaded that Salesforce should have been identified as an RPI in this proceeding"); id. at 403-04 (same, final written decisions).
Importantly, the Board failed to expressly address whether RPX's petitions were time barred under § 315(b). Rather, the Board viewed § 315(b) as a mere "relevant factor" to the real party in interest inquiry. J.A. 1069 ("[D]etails of the relationship between Petitioner [RPX] and Salesforce and Petitioner's reasons for filing the instant Petitions, particularly in view of the fact Salesforce is time-barred under 35 U.S.C. § 315(b), are certainly relevant to the RPI inquiry in these proceedings." (emphasis added) ).
As the Supreme Court recently noted, Congress designed IPR to be a "party-directed , adversarial process," not an "agencyled, inquisitorial process." SAS Inst. Inc. v. Iancu , --- U.S. ----, 138 S.Ct. 1348, 1355, 200 L.Ed.2d 695 (2018) (emphasis added). The Board is required to address the issues that the parties raise during the proceeding, and it lacks authority to substitute its choice of issues over that of the parties'. Thus, when a patent owner alleges a violation of § 315(b) and proffers concrete evidence in support, the Board is required to conduct a thorough § 315(b) analysis and include such analysis it in its decisions.[7]
Due process, the bedrock of privity, requires as much. This is particularly true in the context of § 315(b). As a threshold issue prior to institution, § 315(b) time bar determinations are vital because IPRs can deprive a patentee of significant property rights through the cancellation of claims, as in this case. The AIA imposes no standing requirement on who may file a petition, but the gate to IPR institution is not open to every would-be petitioner. Section 315(b) is the gatekeeper to deny institution of petitions from time barred petitioners, their real parties in interest, and their privies.

Privity serves the important purpose of precluding parties from contesting matters where they had a "full and fair opportunity to litigate[,] protect[ing] their adversaries from the expense and vexation attending multiple lawsuits, conserve[ing] judicial resources, and foster[ing] reliance on judicial action by minimizing the possibility of inconsistent decisions." See Montana v. United States , 440 U.S. 147, 153-54, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979).

According to an annual report to the Securities and Exchange Commission filed on March 10, 2014, RPX stated that "[w]e offer and have written insurance policies for clients interested in additional management of their exposure to patent infringement claims brought by NPEs." J.A. 31. It is unclear whether Salesforce has purchased any insurance policies from RPX.

In this context, upon payment of a claim, an insurer typically becomes subrogated to the interests of the insured, in particular to recover monies paid by the insured. Any judgment taken in subrogation for or against the insured would extend to the insurer precisely because there exists a substantive legal relationship. See 18A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure , § 4451 (2d ed. 2002).

For example, the terms of the insurer-insured relationship could create certain subrogation rights wherein in the case of a loss, the insurer stands in the shoes of the insured, a legal obligation that may establish that, as a matter of law, the insurer had notice of the action giving rise to its subrogated interest. See Intel Corp. , 946 F.2d at 839 ; Ridgway , 578 F.2d at 1029.

The nonpublic record shows that Salesforce is a significant client for RPX. Salesforce paid RPX more than [ ] between 2012 and 2015 with increasing annual payments from about [ ] in 2012 to more than [ ] in 2015. J.A. 82 (confidential information redacted).

Importantly, this court has not determined whether it has authority to review the Board's institution decisions related to § 312(a)(2) determinations. Wi-Fi One , 878 F.3d at 1375 ("We do not decide today whether all disputes arising from §§ 311-14 are final and nonappealable. Our holding applies only to the appealability of § 315(b) time-bar determinations.").

Note that the conflation of § 315(b) and § 312(a)(2) is not isolated to this case. See , e.g. , Institution Decision at *1, Broad Ocean Techs., LLC , IPR2017-0803, 2017 WL 3671102 (P.T.A.B. Aug. 23, 2017) ; Institution Decision at *3, Elekta, Inc. , IPR2015-1401, 2015 WL 9898990 (P.T.A.B. Dec. 31, 2015) ; Institution Decision at *3, LG Display Co., Ltd. , IPR2014-1362, 2015 WL 930460 (P.T.A.B. Mar. 2, 2015). The Board, however, has properly distinguished § 315(b) and § 312(a)(2) in some cases. See Institution Decision at *3, Aruze Gaming Macau, Ltd. , IPR2014-1288, 2015 WL 780607 (P.T.A.B. Feb. 20, 2015). For example, the Board in Aruze noted that "[t]he parties' briefs comingle their analyses of the issues of RPI and privity, and often use the terms interchangeably." Id . The Board in Aruze recognized that "[t]he two terms describe distinct concepts with differing effects under the statute," noting that "35 U.S.C. § 312(a)(2) [requires that a] petition must identify all RPIs, but not privies," and proceeded in analyzing § 315(b) and § 312(a)(2) separately. Id . at *8-11. Nonetheless, the body of the Board's decisions conflating § 315(b) and § 312(a)(2) inquiries could be one reason why the parties sometimes comingle privity and real party in interest challenges in IPR proceedings. This comingling practice cannot continue.